In the Matter of the Application of THOMAS T. CHURCH for the Appointment of Commissioners, etc.

*126-464.*
*139-43*

| | |
|---|---|
| 92 | 1 |
| 155 | 426 |
| d155 | 428 |
| j155 | 436 |
| 92 | 1 |
| 157 | 540 |
| 92 | 1 |
| 160 | 396 |

The act (Subd. 9, § 1, chap. 482, Laws of 1875, as amended by chap. 365, Laws of 1880, and by chap. 554, Laws of 1881), giving to the board of supervisors in any county containing an incorporated city of over one hundred thousand inhabitants, where contiguous territory in the county has been mapped out into streets and avenues, power to lay out, open, grade and construct the same, and to provide for the assessment of damages on the property benefited, is not a local law within the meaning of the State Constitution, and so is not violative of the constitutional provision (Art. 3, § 18) prohibiting the passage of a local or private law laying out or opening highways, or of the provision (Art. 3, § 23) requiring the legislature to act by general laws in conferring upon boards of supervisors any power of local legislation.

Where a board of supervisors, acting within the authority so conferred, has created the occasion for and has required the appointment of commissioners to estimate and appraise the damages and benefits, the Supreme Court has jurisdiction to make such appointment.

The board of supervisors may impose the whole cost of the improvement upon the property included in the area which it decides has been benefited to that extent.

By resolution of the board of supervisors of the county of K. which had directed the opening of a street, under said act, in the town of N. U., the town was authorized to issue bonds to pay for the improvement, to be paid out of the general tax, so far as the assessments proved in-

SICKELS — VOL. XLVII.    1

adequate. *Held*, that adequate and certain provision was thus made for compensation for property taken, sufficient to meet the constitutional prohibition against the taking of property without compensation.

(Argued March 6, 1883 ; decided March 20, 1883.)

APPEAL from order of the General Term of the Supreme Court, in the second judicial department, made December 12, 1882, which affirmed an order of Special Term appointing commissioners for the purpose of opening Ninety-second street, in the town of New Utrecht, Kings county, from Seventh avenue to the Shore road ; also to appraise the damages for lands taken for such improvement, and to assess the amount, together with expenses, upon the property benefited. (Reported below, 28 Hun, 476.)

In 1869 an act of the legislature constituted certain town officers of some of the towns in the county of Kings, contiguous to the city of Brooklyn, commissioners to lay out a plan for streets and roads in those towns, respectively. (Chapter 670, Laws of 1869.) Exclusive power was conferred on these commissioners to lay out streets, roads and avenues in such towns conformable to plan of streets of said city, terminating at the city line, as nearly as might be practicable and judicious.

In performance of the duties imposed on them the commissioners prepared a map, including among others the town of New Utrecht, and laying out the whole area of that town in projected avenues and streets similar to those in Brooklyn city.

In November, 1881, the supervisors, justices of the peace and commissioners of highways of the town of New Utrecht claiming authority, under chapter 554, Laws of 1881, having met in that town, pursuant to public notice, certified to the necessity of opening said Ninety-second street, said certificate being signed by more than two-thirds of said officers, upon which certificate the board of supervisors of Kings county passed resolutions making certain alterations in the map of said street, as filed, and also the following :

" SEC. 3. The County Court or the Supreme Court at Special Term, in Kings county, upon the application of any

freeholder of the town, or of the trustees of the school district within which said street is situated, upon five days' notice of such application in one of the daily newspapers of the county, shall appoint three disinterested persons, residents and free-holders of said town, as opening commissioners, for the purpose of opening said street," following which were resolutions as to the mode of proceedings, on the part of the commissioners so appointed, and as to the confirmation of their report.

By further resolutions it was directed that the supervisors of the town borrow on its credit the amount of unpaid assessments, and give the bonds of the town therefor, with directions to apply all sums received in payment of the assessments, and it was provided that "any deficiency, required to meet the principal and interest on said bonds, shall be made a tax on the real and personal estate of the town, and collected in and with the annual taxes."

Thereupon the petitioner above-named made application to the Supreme Court for the appointment of commissioners.

*George B. Ely* for appellants. The act of 1881 (Chap. 554) was violative of section 18 of article 3 of the Constitution, which prohibits the legislature from providing for "the laying out, opening, altering, working or discontinuing roads, highways or alleys except by general laws." (*State, ex rel. Richards*, v. *Hammer*, 42 N. J. L. 438; *State, ex rel. Anderson*, v. *Trenton*, id. 486; *People, ex rel. Clauson*, v. *Newburgh, etc., P. R. Co.*, 86 N. Y. 1; *People* v. *O'Brien*, 38 id. 194; *People, ex rel. Burroughs*, v. *Brinkerhoff*, 68 id. 265.) The commissioners could be appointed only on the application of owners of the lands through which the road is laid out. (1 Laws of 1872, chap. 315; 1 R. S. [7th ed.] 844, § 5.) The act of 1881 (Chap. 554) is void because it authorizes the county board to provide arbitrarily at its discretion for the estimation and award of the damages to be sustained, and for the assessment on property intended to be benefited thereby, and fixing assessment district therefor; the levying, collection and pay-

ment of the amount of such damages. (*People, ex rel. Burroughs*, v. *Brinkerhoff*, 68 N. Y. 264.)

*William Sullivan* for respondent. The act of 1881 (Chap. 554) is a general law, for it in terms applies to a specified class of things wherever situated. ( *Walker* v. *Potter*, 18 Ohio, 85; *Wheeler* v. *Philadelphia*, 77 Penn. St. 348, 351; *Kilgore* v. *Magee*, 85 id. 401; *Matter of N. Y. El. R. R. Co.*, 70 id. 328; *People* v. *N. & S. P. R. Co.*, 86 id. 1.) The enactment of the board of supervisors is warranted by the act on which it is based, and it does not infringe on the constitutional rights of the parties affected by the opening and construction of the street. (*Mayor* v. *Livingston*, 8 Wend. 85; *Betts* v. *City of Williamsburgh*, 15 Barb. 255; *People* v. *Mayor of Brooklyn*, 4 N. Y. 419; *Matter of Sackett St.*, 74 id. 107; Cooley on Taxation, chap. 20.) The requirement of the enactment that notices shall be given to all parties affected by the acts of the commissioners, and that they shall have an opportunity to be heard, and to protect and enforce their rights, is a sufficient compliance with the constitutional provision that no person shall be deprived of his property without due process of law. (*Stuart* v. *Palmer*, 74 N. Y. 185; *Matter of DePeyster*, 80 id. 504.)

Finch, J. We are satisfied that the law under which the present application was made is constitutional. It is not a local, as distinguished from a general, act, and so is not prohibited by the fundamental law. (Const., art. 3, §§ 18, 23 ) It is not easy to define with accuracy the difference between the two forms of legislation, and the difficulty is better solved by adding examples to definitions. Of the latter, the most useful and accurate is that given in *The Matter of the N. Y. Elevated R. R.* (70 N. Y. 328). A law relating to particular persons or things *as a class* was said to be general; while one relating to particular persons or things *of a class* was deemed local and private. The act of 1881 relates to a class, and applies to it as such, and not to the selected or particular elements of which it is

composed.    The class consists of every county in the State, having within its boundaries a city of one hundred thousand inhabitants, and territory beyond the city limits mapped into streets and avenues.    How many such counties there are now, or may be in the future, we do not know, and it is not material that we should.    Whether many or few, the law operates upon them all alike, and reaches them, not by a separate selection of one or more, but through the general class of which they are individual elements.    The force of the law of 1881 is not localized in Kings county and confined to its territory.    By its terms it applies equally to every other county which may prove to be within the constituted class.    It is said there is but one such county ; and so it was said there was but one elevated railroad. Neither fact at all narrowed the terms of the law.    Those terms in each case were broad enough to cover every county in the State if it had the required city and the mapped territory on the one hand, or its own elevated road on the other.    The case cited adds example to definition, and, following its doctrine, we must hold the law of 1881 to be general and not local, and so not a violation of the Constitution.

The jurisdiction of the Supreme Court to appoint the commissioners of estimate is assailed upon the ground that its sole authority to act came from the mandate of the county board, which was ineffectual for that purpose.    But the Constitution gave to the Supreme Court general jurisdiction in law and equity, and, by the specific provision requiring the damages for property diverted to the public use to be ascertained by a jury or commissioners appointed by a court of record, conferred upon all such courts the necessary jurisdiction.  · The mode and manner of its exercise was put within the control and regulating power of the legislature, because it was to be exercised " as prescribed by law."    In that respect the legislature could not delegate its authority except by the permission of the Constitution.    Such permission was given.    (Art. 3, § 23.) The legislature was allowed to transfer a power of local legislation, so far as it should deem necessary or prudent, to the county boards.    What it could do, over all the State and in

every locality, in providing the occasion for and requiring the appointment of commissioners of estimate, it could transfer for a particular county to the board of supervisors of that county, so that the latter became within its prescribed authority a local legislature. This was done in the county of Kings by the act of 1875 as amended in 1881. Thereby the local legislature, acting within the authority conferred, could create the occasion for and call into exercise the power of the Supreme Court to appoint commissioners, and that appointment when made was " as prescribed by law." The county board did not create the jurisdiction. That came from the fundamental law. What it did was to call it into play, to furnish occasion for its exercise, and to require its aid. When it did that the jurisdiction of the court in the particular instance was complete.

There is no force in the objection that after fixing the assessment district the total expense cannot be assessed upon the property included, but only so much as is found to be the actual benefit. That is but another form of saying that the legislature cannot impose the whole cost upon the area which it decides is benefited to that extent. The case of *Stuart* v. *Palmer* (74 N. Y. 185), cited by the appellant, expressly holds that the legislature may cause local improvements to be made and authorize the expense thereof to be assessed upon the land benefited thereby. The resolution of the county board imposes upon each owner his share of the cost in proportion to his benefit accruing.

Nor is the system of awards and the provision for the payment thereof inadequate and uncertain. By force of the resolutions of the county board the public purse of the town is made responsible for any deficiency in the awards resulting from failure of the assessments, and to enable payment to be more readily made, the town is authorized to borrow the necessary amount by the issue of its bonds, and these are to be paid out of the general tax of the whole town so far as the assessments are inadequate. The difficulty and uncertainty of payment commented upon in *Chapman* v. *Gates* (54 N. Y. 145) and *Sage* v. *City of Brooklyn* (89 id. 189) does not here exist.

Other objections taken are founded upon the general system of laying out and opening highways which have no application to the present case.

The order should be affirmed, with costs.

All concur.

Order affirmed.