In the Matter of LINCOLN PARK, in the City of St. Paul.

August 20, 1890.

**St. Paul Park Board—Park Fund, how to be Created.**—Under the provisions of the act creating a park board for the city of St. Paul, the compensation for land taken for parks is to be paid out of a special fund called a "park fund," made up of the proceeds of a limited number of bonds of the city and assessments for benefits to the amount of 50 per cent. upon lands benefited, and is not made a general charge upon the treasury of .the city.

**Same—Liability of City.**—And, except from the fund provided, the statute imposes upon the city no liability to pay for the same.

**Same—Condemnation—Inadequate Provision for Compensation.**—In view of the general authority given to the board to procure land for parks, there is not found in the act adequate provision for securing compensation for lands taken by condemnation proceedings.

**Same—Act Otherwise Valid.**—The act as amended *held* otherwise valid.

*Certiorari*, the writ being issued on the application of William J. Godfrey, to review a judgment of the district court for Ramsey county, *Kerr*, J., presiding.

*S. L. Pierce*, for relator.

*O. E. Holman*, for respondent.

VANDERBURGH, J. The questions here involved arise in proceedings instituted by the board of park commissioners of the city of St. Paul, to acquire lands for the purposes of a park; and the lands of the petitioner and others have been assessed for benefits arising from the improvement, under the provisions of the act creating a board of park commissioners for the city, and the amendatory acts of 1889. The assessment was confirmed by the board of public works, pursuant to the charter, and judgment rendered by the district court against the property specified for the amount of the assessment, and the relator brings the case here upon *certiorari* to review that judgment.

It is claimed on the part of the relator that the provisions of the act in question are insufficient to authorize the board to acquire

lands by condemnation proceedings, and hence it necessarily follows that no assessments for benefits can lawfully be made. The chief objection is that the legislature has failed, by the provisions of the act relating to condemnation proceedings to acquire land for parks, to provide an adequate and safe fund as security for the payment or compensation to be made for the lands taken. This objection is founded chiefly on the fact that the provisions made for the park fund, out of which such payments are to be made, leave it doubtful and uncertain whether the fund will be sufficient to meet the demands upon it. By section 4 of the original act creating the board, (Sp. Laws 1887, c. 313,) it was authorized to acquire land for public parks by purchase in the name of the city, and by section 5 by condemnation, (amendment of 1889, Sp. Laws, c. 50;) and in either case 50 per cent. of the cost is directed to be assessed upon lands benefited. Under section 5, "when the said board of park commissioners shall deem it to the public interest that any tract or tracts of land shall be condemned for the use of said city for parks," it is made the duty of the board of public works, upon the order of the park board, to appraise the damages or compensation to be paid, and to assess benefits to the amount of *50 per cent.* of the cost, and to that end the same procedure is provided and adopted as in cases of assessments made by the board of public works for local improvements under the city charter. "And when an assessment shall have been confirmed by the said board of public works, and no appeal taken therefrom, or, if an appeal shall have been taken, when judgment shall have been rendered thereon, the same shall be a lawful and sufficient condemnation of the land or property appropriated." The park board is also authorized to abandon the proceedings at any time before the confirmation of the assessment. Sp. Laws 1889, c. 50, § 1. By section 3, same chapter, provision is made for the issuance of bonds to a *limited* amount, and the proceeds thereof, together with the assessments for benefits collected, are directed to be paid into the city treasury to the credit of the park commissioners, and to constitute a fund to be called the "city park fund." It is the contention of the respondent that when the damages in the proceedings for the condemnation of land sought to be appropriated for park purposes

under the act are assessed and the assessment confirmed by the board of public works, the city is entitled to the property immediately, and thereupon stands indebted to the land-owner in the sum awarded, as a general charge upon its treasury, and the provisions of the act referred to for a special park fund are to enable the city to meet the liability imposed, but that the city is primarily and absolutely liable for the compensation awarded. If this is so, then the act provides a remedy adequate and certain, and the objections urged against it by the relator, to which we have referred, cannot be sustained. But upon a careful examination and comparison of the different provisions of the act we are forced to the conclusion that it will not bear this construction. The provision in respect to the effect of the confirmation of the assessment is to be read in connection with the preceding language of the same section, which reads, "and when such condemnation shall have been completed and *the lands paid for as herein provided,* the title to such lands shall pass and be vested in fee-simple in the city of St. Paul." And it is also expressly provided that "the amount of damages or compensation so ascertained, over and above the benefits to be deducted therefrom, shall be paid to the person or persons entitled thereto *out of the park fund.*" This fund, as we have seen, is special and limited. It is made up of moneys received from assessments for benefits, to the amount of 50 per cent. only, and the proceeds of a limited number of bonds. The sums awarded for damages are not declared to be debts against the city, nor is it made the duty of the corporation to pay the money. *McCullough* v. *Mayor of Brooklyn,* 23 Wend. 458.

In *Sage* v. *City of Brooklyn,* 89 N. Y. 189, 198, it is said unless the statute imposes the primary or ultimate duty of paying for the land, it cannot be implied from the mere taking of the same for a park. The authority to take and the duty of the corporation to pay for the land taken depend upon positive law. The authority to take will be ineffectual unless accompanied with proper provisions for payment, but the duty of the corporation to pay the land-owners must be found in the affirmative prescriptions or reasonable intendments of the statute. It is sufficient if a certain and adequate remedy is provided by which the individual can obtain compensation without any unreason-

able delay. Unless there is certainty that it will be paid, or unless it is made a public charge, so that it may be obtained in due course through the aid of the courts without unreasonable delay, there is no adequate provision for obtaining compensation. *Rexford* v. *Knight*, 11 N. Y. 308, 314; *Chapman* v. *Gates*, 54 N. Y. 132, 146. It is necessary that the act which invades the ownership shall provide for a certain, definite, and adequate source and manner of payment. *In the Matter of Mayor, etc.*, 99 N. Y. 569, 577, (2 N. E. Rep. 642.) In the case last cited, and in *Sage* v. *City of Brooklyn, supra*, the statute directly imposed upon the corporation the absolute duty of payment. In *Matter of Church*, 92 N. Y. 1, a town was authorized to issue bonds to recover any deficiency in an assessment. In *State* v. *Messenger*, 27 Minn. 119, (6 N. W. Rep. 457,) the party claiming damages had a right, under the statute, to present his claim to the board of county commissioners for allowance upon the same footing with other claims against the county, and such claim, when established, became a charge upon the public treasury. So in condemnation proceedings for local improvements under the charter of the respondent, the entire cost is provided for by assessments upon property benefited, and is to be paid for within a reasonable time fixed in the charter. And these statutory provisions are deemed sufficient to afford an adequate and certain remedy to the land-owner. *In the Matter of Church, supra; Stuart* v. *Palmer*, 74 N. Y. 183.

By section 3 it is made the duty of the board to devise a system of parks for the city, and to designate the lands and grounds for such purpose. And such lands they are authorized to acquire by purchase or condemnation. Sections 4, 5. How extensive or expensive the acquisition of lands may prove to be under the authority conferred upon the board is of course uncertain. It will hardly be claimed that the special fund provided appears to be safe, certain, and adequate for the purposes of the act. And, as we understand him, the counsel for respondent does not claim that the provisions for the special park fund made in the act are in themselves sufficient to constitute an adequate remedy for the land-owners' compensation, either as to amount or time of payment, but he rests his argument in support of the validity of the act solely on the ground, already

mentioned, that the statute creates a primary and absolute corporate liability against the city to pay for land taken under condemnation proceedings, and treats the special fund merely as a provision for meeting the outlay, or reimbursing the city for its expenditures under the act. In support of this view our attention is further directed to the language of the amendment to section 7 made in 1889. Section 7 provides that *for the purposes of this act* the common council shall be authorized to issue and negotiate bonds to the amount of $225,000, the proceeds of which shall be paid into the city treasury to the credit of the board of park commissioners, and shall constitute a fund to be called the *"city park fund."* To this fund is also to be added the assessments for benefits (50 per cent.) before referred to. The amendment of 1889 is as follows: "All expenditures under this act shall be audited by said board, and upon the presentation to the city treasury of receipted vouchers for the same, certified to have been approved by said board of park commissioners, by its president or vice-president, and secretary, and countersigned by the city comptroller, shall be paid by the city treasurer." If this provision may be reasonably construed as imposing upon the city treasurer a general and absolute duty to pay claims for lands condemned for parks when duly approved, the statutory direction to the treasurer is a direction that the municipality pay the same, and they would therefore become corporate debts. *Sage* v. *City of Brooklyn*, 89 N. Y. 189, 201. But the amendment refers to the authentication and mode of payment of "expenditures under this act," and must be construed in connection with the preceding provisions for the creation of the park fund, and expressly directing expenses (section 2) and claims for compensation for land (section 5) to be *paid from the "park fund."* From the whole tenor of the act it is quite plain that its framers did not intend to create any liability against the city in addition to the limited issue of bonds, and this construction is in harmony with the provisions of the charter (chapter 5) in relation to the general and special funds of the city, and the purposes for which the same may be used, and the manner in which they may be paid out.

We do not regard the other objections urged by the relator to the act tenable or important to be considered, particularly in view of the re-enactment of the provisions of the original act by chapter 367, Sp. Laws 1889. Nor does the objection we have considered, as we now see, go to the validity of the entire act, or otherwise affect the proceedings of the board or the title to property acquired by purchase or the ultimate consent of the land-owner.

Judgment reversed.