STATE *ex rel.* JOHN A. STEES *et al. vs.* CHARLES E. OTIS, Judge.

Argued April 25, 1893. Decided May 22, 1893.

**St. Paul City Charter Construed and Held Valid.**

> The charter of the city of St. Paul, as amended in 1891, imposes upon the city the duty of paying the compensation assessed for the taking of property for public use; hence the law authorizing such taking of property is not unconstitutional.

**Local Improvements—District Benefited how Determined.**

> A notice of the meeting of the board of public works for the purpose of assessing upon the property benefited the cost of a public improvement is invalid if, in advance of any hearing, it defines a limited district as embracing the property upon which the assessment is to be made.

On November 30, 1892, John A. Stees and forty other persons owning real estate on Seventh street, St. Paul, presented in this court their verified petition, and obtained a writ of *Certiorari* to the District Court of Ramsey County, returnable on the first day of the

April term, 1893, and requiring that court to certify and return to this court all the proceedings had in that court touching the application of the City Treasurer for judgment against their property for assessments of the costs and expenses of widening East Seventh street between Broadway and Rosabel streets.

*Hon. Charles E. Otis,* one of the Judges of the District Court, made return January 9, 1893, to this court of the entire record of the proceedings had and taken in the District Court. It appeared therefrom that the Common Council on November 3, 1891, referred the matter of widening the street to the Board of Public Works, and that Board reported December 22, 1891, in favor of the proposed widening, and estimated the expense at $13,500, and submitted a plan thereof. On January 5, 1892, the Council ordered the Board of Public Works to make the improvement, and without delay to assess the expense upon the real estate to be benefited. The Board on January 22, 1892, gave notice that they would meet at their office on February 8, 1892, to make an assessment of benefits, costs and expenses arising from the widening of the street from Broadway to Rosabel streets on the property on the line of Seventh street from Jackson street to Kittson street, and deemed benefited or damaged thereby. All persons interested were thereby notified to be present at said meeting, and they would be heard. Pursuant to this notice the Board met and made and filed an assessment of benefits and damages within the limits designated in the notice. The assessment was afterwards confirmed, and a warrant issued for its collection, but the assessments upon the real estate of these petitioners were not paid. The City Treasurer thereupon gave notice, and applied to the District Court for judgment against each piece of said real estate for the amount assessed against it. The petitioners filed their objections and served copies on the Corporation Attorney, and at the hearing made their proofs before the court, but judgment was granted and entered November 16, 1892, against their property. They then obtained the writ of this court to review the proceedings.

*S. L. Pierce,* for relators.

The order of the City Council was, that the Board of Public Works should assess the amount required to pay the damages of widening

Seventh street upon the real estate to be benefited by the improvement. But the notice on its face limits the territory to be assessed to property on the line of Seventh street from Jackson street to Kittson street. Not only is this notice jurisdictional, but unless it is given at the time and in the manner required, the Board has no right to proceed, and the proceedings are unauthorized and void. 2 Dillon, Mun. Corp. (3d Ed.) § 606; *McComb* v. *Bell,* 2 Minn. 295, (Gil. 256;) *Sewall* v. *City of St. Paul,* 20 Minn. 511, (Gil. 459;) *Overmann* v. *City of St. Paul,* 39 Minn. 120.

One of the first duties of the Board in making the assessment is to ascertain what property is to be benefited. If this is done before notice is given, it is in violation of the rights of the owners of the land assessed to have previous notice. It is an *ex parte* adjudication of a material right of the owners of the property found to be benefited, for on being heard, they might have been able to convince an impartial tribunal that other lands were specially benefited, and the greater the quantity of land so benefited, the lower the assessment on each parcel. But in this case the notice shows on its face that the assessment was arbitrarily limited to property fronting on the street that is widened, while the order was, that it should be on all property specially benefited.

*Leon T. Chamberlain* and *Hermon W. Phillips,* for respondent.

This notice has been held good by this court. *Fairchild* v. *City of St. Paul,* 46 Minn. 540.

This notice contains everything required by the Charter of the City. The objection made by the relators is, that the notice contains more than the Charter requires. If it does, this extra statement is surplusage, and would not prevent the notice from being received by the proper parties, the notice being given solely by publication; and the most important thing is, that the notice should be received by the proper parties. *Johnson* v. *City of St. Paul,* 52 Minn. 364.

DICKINSON, J. By a writ of *certiorari,* the proceedings, under the charter of the city of St. Paul, for the widening of East Seventh street, and involving a condemnation of land for that purpose, have been brought here for review. Two questions are presented:

*First.* Under the city charter, in its present form, is there such pro-vision for the payment of the damages which may be assessed in favor of the landowner for the taking of his land that such compensation is "secured" to him, as required by the constitution? *Second.* Was the notice of the meeting of the board of public works for the assessment of damages and benefits insufficient for the reason that it specified the limits of the district to be assessed?

1. The argument of the relators upon the first of these points is, in brief, that while by the provisions of the charter the confirmation of the assessment of damages completes the condemnation, so that the city may then take possession, no absolute duty of paying the damages assessed rests upon the city, and that such compensation can only be made from the fund derived from collections of special assessments. We cannot admit the correctness of this premise upon which it is claimed that the city is without power to constitutionally condemn private property for public use. We hold, on the contrary, that upon the completion of the condemnation proceedings it becomes the absolute duty of the city to pay, within six months thereafter, the damages awarded, with interest at the rate of seven per cent. per annum. In so holding we only restate what is unequivocally expressed in the last of the legislative enactments to which we are cited,—Sp. Laws 1891, ch. 12, §§ 2, 3, amending Sp. Laws 1887, ch. 7, subch. 7, §§ 17, 18, of the prior law. Section 17 in the law of 1887 provided for the payment of the damages awarded "as soon as a sufficient amount of the assessments shall have been collected for that purpose;" and by the terms of section 18 the city was not authorized to take possession until the money was thus collected and ready to be paid. Some other provisions of the law need not be particularly referred to. But by the amendment of 1891 it was provided that, the assessment having been confirmed, it should be a lawful and sufficient condemnation, and "the city of St. Paul shall thereupon cause to be paid to the owner of such property the amount of damages over and above all benefits which may have been awarded therefor within six months after date of the confirmation of such assessment, with interest at the rate of seven per cent. per annum;" and (by section 3) that, upon the confirmation of the assessment, the city should have the right to take possession of the premises ordered to be condemned.

It is plain that the very purpose of the amendment of 1891 was to impose upon the city the absolute duty to pay the damages awarded in such proceedings, and to change the law requiring payment to be made out of a special limited fund. It may be presumed that this amendment was made in the law by reason of the decision of this court a few months before *In re Lincoln Park,* 44 Minn. 299, (46 N. W. Rep. 355.)

In view of this plain effect of the above act (chapter 12) it may not be very important whether the *prior* act of the same year, (Sp. Laws 1891, ch. 6,) which was both introduced in the legislature and passed before chapter 12, contemplated that the city should be chargeable with the payment of such compensation to the landowner. The later law must be given effect. We will, however, say in this connection that the twenty-fourth subdivision of the section in the earlier of these acts, specifying the purposes for which taxes may be levied, (Sp. Laws 1891, p. 202,) would include, as a proper purpose for the levying of taxes, the providing of means for the discharge of any obligation legally imposed upon the city, as, under the later act, is the duty of paying for lands condemned for public use pursuant to the charter.

The law imposing upon the city the obligation to pay the damages awarded, and only a reasonable time being allowed therefor, interest being added to compensate for the delay, the proceeding was not subject to objection on constitutional grounds. See *Commissioners of State Park* v. *Henry,* 38 Minn. 266, (36 N. W. Rep. 874.)

2. The improvement for which assessments were made upon the property of the relators consisted of the widening of East Seventh street from Broadway to Rosabel street, the land condemned for that purpose being a strip on one side of East Seventh street, between the two other streets named. The notice given by the board of public works, the sufficiency of which is called in question, was to the effect that the board would meet at a given time and place to make assessments of damages and benefits arising from this improvement "on the property on the line of said Seventh street from Jackson street to Kittson street, and deemed benefited or damaged thereby." In other words, the notice was, in effect, that the distribution by assessment of the cost of the improvement would be con-

fined to the property on Seventh street between Jackson and Kittson streets. It involved or was based upon a determination by the board, in advance of any notice or hearing, defining the district specially benefited, and upon which therefore, under the charter, the cost should be assessed. It will be seen that the district to be assessed, as indicated in this notice, is not coextensive with the improvement. It is not "the property fronting upon such improvement." Whether it extends beyond the limits of the improvement, or is of less extent, is not probably material. The rule of *frontage* was not adopted as the basis of the assessment, but the rule of special benefit, irrespective of frontage; and the procedure must be such as is required when assessments are to be made according to the latter rule.

It is apparent from the charter provisions, to which it is unnecessary to refer particularly, that when such assessments are to be made upon what may be conveniently termed the "rule of benefit," as distinguished from the more arbitrary rule of frontage, it is for the board of public works to determine what property is specially benefited. See *Rogers v. City of St. Paul*, 22 Minn. 494. The question now is whether that board may—as it seems to have practically done in this case—determine this without notice and without opportunity to the parties interested to be heard. The statute answers the question in terms which leave little room for doubt. We refer to Sp. Laws 1887, ch. 7, subch. 7, title 1, § 7, p. 335, which contains these provisions:

"Whenever any order is passed by the common counc'l by virtue hereof for the making of any public improvement * * * which shall require the appropriation or condemnation of any land or real estate, the said board of public works shall, as soon as practicable, proceed to ascertain and assess the damages and recompense due the owners of such land respectively, and at the same time to determine what real estate will be benefited by such improvement, and assess the damages, together with the costs of the proceedings, on the real estate by them deemed benefited, in proportion, as nearly as may be, to the benefit resulting to each separate lot or parcel thereof.

"Sec. 8. The said board of public works shall then give fifteen days' notice by one publication in the official newspaper of the city

of the time and place of their meeting, for the purpose of making said assessment, in which notice they shall specify what such assessment is to be for, and they shall describe the land to be condemned as near as may be by general description, and all persons interested in such improvement shall have the right to be present and be heard. * * * The board shall view the premises to be condemned, and receive any legal evidence that may be offered for the purpose of proving the true value thereof, or the damages that will be sustained, or benefits conferred, by reason of the contemplated improvement."

From a careful reading of this statute it is apparent that the specified notice is required to be given of the time and place of meeting, for the purpose not only of the assessment of damages or compensation for the taking of the land, but also of the assessment of benefits, and that all persons interested are entitled to be heard. Without such notice and hearing, the board is not authorized to determine upon what district or property the burden shall be imposed, unless, at least, the rule of frontage is adopted as the basis of the assessment; and, since the board is to distribute and assess the whole cost of the improvement upon the property deemed to be specially benefited, if that be possible at least, it follows that any predetermination by the board fixing or limiting, as was done by this notice, the district over which the burden was to be distributed, would be prejudicial to the rights of those owning property within that district. They had a right to have the burden distributed as widely as, after a proper hearing, the board should judge to be just. But by this notice the board deprived itself of the power, unless it should proceed *de novo* under a different notice, to carry the assessment beyond the limits specified in this notice, even though it might appear upon hearing that the special benefit extended much beyond such limits. This was prejudicial to the relators.

For this defect in the notice it is considered that judgment against the property of the relators should not have been allowed, and the same is, as to such property, reversed.

VANDERBURGH, J., absent.

(Opinion published 55 N. W. Rep. 143.)