In the Matter of the Application of HERMAN HENNEBERGER et al., Appellants, for the Appointment of Commissioners to Widen and Improve a Portion of a Highway; THE TOWN OF NEW ROCHELLE et al., Respondents.

1. CONSTITUTIONAL LAW — LOCAL BILLS. In passing upon a statute, its validity, under the constitutional provision restricting the passage of private or local bills, depends upon the special circumstances of the case.

2. ACT GENERAL IN FORM LOCALIZED BY RESTRICTIONS ON OPERATION. Although an act is drawn in general terms, if its provisions are such in number and in character as unduly, with reference to the constitutional purpose, to restrict its operation and, to all intents, to confine it to a particular locality, it comes as much under condemnation as a local bill as though it designated the locality by name.

3. ACT CONCERNING TOWNS LOCALIZED BY LIMITATIONS IN ADDITION TO THOSE OF CLASSIFICATION. While an act might be general if it affected all towns of a class and that class was based on population, or some other condition which might be recognized as possibly common to a class, or which might permit of classification, yet if it contain such added limitations as to restrict its operation to what must always be, in the nature of the case, a very limited number of specified localities, if not, in fact, one locality, then it is local within the constitutional sense.

4. LOCAL HIGHWAY ACT. Chapter 286, Laws of 1897, entitled, "An act to provide for the widening and improving of highways in towns having a total population of 8,000 or more inhabitants and containing an incorporated village having a total population of not less than 8,000 and not more than 15,000 inhabitants," and which provides that, "except in the county

of Madison, any five or more persons owning lands adjoining or abutting on any highway, which extends within the limits of such town and without the limits of such incorporated village for a distance of at least two and one-half miles," may petition the court for the appointment of commissioners to widen and improve " such highway or a certain specified portion thereof not less than two miles and a half in length, such portion being wholly without the limits of such incorporated village," although general in form is so confined in its operation, by its conditions, to a limited territory, as to make it a local act, within the clause of the Constitution (Art. 3, § 18) which prohibits the legislature from passing any private or local bill laying out or altering highways.

*Matter of Henneberger*, 25 App. Div. 164, affirmed.

(Submitted March 1, 1898; decided April 19, 1898.)

APPEAL from an order of the Appellate Division of the Supreme Court in the second judicial department, entered January 24, 1898, reversing an order of Special Term which granted an application of the petitioners for the appointment of commissioners to widen and improve a portion of a highway in the town of New Rochelle.

The facts, so far as material, are stated in the opinion.

*Isaac N. Mills* for appellants. This act does not violate section 10 of article 8 of the Constitution. (*People ex rel.* v. *Banks*, 67 N. Y. 568.) The act does not violate section 18 of article 3 of the Constitution because of the exemption of the county of Madison. (*People ex rel.* v. *N. & S. P. R. Co.*, 86 N. Y. 1; *People* v. *O'Brien*, 38 N. Y. 193; *People ex rel.* v. *Bd. Suprs.*, 112 N. Y. 585; Const. N. Y. art. 3, § 27; *People ex rel.* v. *Sheriff, etc.*, 13 Misc. Rep. 587; *People* v. *Havnor*, 149 N. Y. 195.) This act does not violate section 18 of article 3 of the Constitution because it contains restrictions which at present limit its operation to a few towns. (*Matter of Church*, 28 Hun, 479; 92 N. Y. 1; *People ex rel.* v. *Squire*, 107 N. Y. 601; *Ferguson* v. *Ross*, 126 N. Y. 459; *Treanor* v. *Eichhorn*, 74 Hun, 58; L. 1892, ch. 493, § 1; *Matter of W. S. A. & P. R. R. Co.*, 115 N. Y. 447; *Matter of Burns*, 155 N. Y. 23.) This act does not violate section 2 of article 10 of the Constitution. (*Astor* v. *Mayor, etc.*, 62

N. Y. 567, 575; *People ex rel.* v. *McDonald,* 69 N. Y. 365; *Matter of Mayor, etc.,* 99 N. Y. 583; *Town of Kirkwood* v. *Newburg,* 45 Hun, 327; 122 N. Y. 577; *People ex rel.* v. *Palmer,* 52 N. Y. 83; *People ex rel.* v. *Flagg,* 46 N. Y. 401; *People* v. *Pinckney,* 32 N. Y. 377, 381; *Hequembourg* v. *City of Dunkirk,* 49 Hun, 557; *Matter of Ryers,* 72 N. Y. 5; *Met. Bd. of Health* v. *Heister,* 37 N. Y. 661; *Matter of Hathaway,* 71 N. Y. 243; *S. P. Assn.* v. *Mayor, etc.,* 8 App. Div. 255.) The legislature has power to pass a general law for the laying out or improving of highways, even if the same has not been reported by the statutory revision commission. (*People ex rel.* v. *Comstock,* 78 N. Y. 356; *People* v. *Petrea,* 92 N. Y. 138.) Every presumption is in favor of the constitutionality of this statute; and it should not be declared unconstitutional unless there be no fairly reasonable argument to sustain its constitutionality. (55 N. Y. 54; *Sweet* v. *City of Syracuse,* 129 N. Y. 316; *People ex rel.* v. *Comstock,* 78 N. Y. 361; *People ex rel.* v. *Albertson,* 55 N. Y. 54; *People ex rel.* v. *Briggs,* 50 N. Y. 553; *Astor* v. *Mayor, etc.,* 62 N. Y. 575.)

*Charles H. Young* for respondents. Chapter 286 of the Laws of 1897 is a local statute and contrary to the provisions of article 3, section 18, of the Constitution. (*People ex rel.* v. *Wemple,* 125 N. Y. 488; *McDowall* v. *Sheehan,* 129 N. Y. 200; *Matter of Burns,* 155 N. Y. 28; *Sweet* v. *City of Syracuse,* 129 N. Y. 333; *Bank for Savings* v. *Grace,* 102 N. Y. 318; *People ex rel.* v. *Potter,* 47 N. Y. 375; *Newell* v. *People,* 7 N. Y. 139; *People ex rel.* v. *Flagg,* 46 N. Y. 401; *People ex rel.* v. *Bd. Suprs.,* 112 N. Y. 588; 74 Hun, 85; 126 N. Y. 464; *Comm.* v. *Patton,* 88 Penn. St. 258; 37 Minn. 322; *Groves* v. *Grant Co.,* 42 W. Va. 587; 86 N. Y. 1.) Chapter 286 of the Laws of 1897 is unconstitutional in that it specifically excepts from its provisions Madison county, and cannot operate in three other of the counties in the state. (*People* v. *Suprs. of Chautauqua County,* 43 N. Y. 19; *People* v. *O'Brien,* 38 N. Y. 193; 86 N. Y. 1; 112 N. Y.

588; 92 N. Y. 1; *Clark* v. *City of Janesville*, 10 Wis. 136; 91 Penn. St. 125; 84 Ill. 590; 110 Penn. St. 243.) The act in question is in direct conflict with section 2 of article 10 of the Constitution. (L. 1897, ch. 286, §§ 2–7.) The law here in question was not proposed to the legislature by the statutory revision commissioners under article 3, section 23, of the Constitution. (*People* v. *Petrea*, 92 N. Y. 139.) The legislature has exhausted its power to pass either general or local acts for the laying out of highways in towns within the state, except such general laws as may be reported by commissioners to revise the statutes, or passed by the legislature conferring powers of legislation on boards of supervisors. (Const. N. Y. art. 3, §§ 18, 23, 27; 112 N. Y. 5; *People ex rel.* v. *Bd. Suprs.*, 112 N. Y. 588; 16 App. Div. 512.) The general Highway Act makes ample provision for the widening and improving of highways. (*People ex rel.* v. *McNeil*, 2 T. & C. 140.)

GRAY, J. This is an appeal from an order of the Appellate Division, in the Second Department, reversing an order made at the Special Term; which granted an application of the petitioners for the appointment of commissioners to widen and improve a portion of a highway in the town of New Rochelle.

The application was opposed by the town of New Rochelle, the village of New Rochelle and a taxpayer of the town, upon the ground that the act, under which the proceeding was instituted, was unconstitutional. The claim of its unconstitutionality was based upon the repugnancy of its provisions to section 18 of article 3 and, as well, to section 10 of article 8 of the Constitution of the state. The act is contained in chapter 286 of the Laws of 1897 and is entitled, "An act to provide for the widening and improving of highways in towns having a total population of eight thousand or more inhabitants and containing an incorporated village having a total population of not less than eight thousand and not more than fifteen thousand inhabitants." Section one, which provides

for the appointment of the commissioners, reads, so far as material, as follows : " Section 1. In any town, having a total population of eight thousand or more inhabitants and containing an incorporated village having a total population of not less than eight thousand and not more than fifteen thousand inhabitants, except in the county of Madison, any five or more persons owning lands adjoining or abutting on any highway, which extends within the limits of such town and without the limits of such incorporated village for a distance of at least two and one-half miles, may present to the Supreme Court, at a Special Term thereof to be held in the county containing said town, a petition for the appointment of three commissioners for the purpose of widening and improving such highway or a certain specified portion thereof not less than two miles and a half in length, such portion being wholly without the limits of such incorporated village."

It is conceded by the appellants that if this is a local act, in the constitutional sense, it violates section 18 of article 3 of the Constitution ; which prohibits the legislature from passing a private or local bill for laying out or altering highways. I think that the extraordinary provisions of this act so confine its operation as to make it a local measure, applicable to a limited territory, which is all but identified by the restrictions of section one. If this act can be upheld as a valid exercise of legislative power, it would go far towards frustrating the intention of the people of the state, and it becomes very easy to evade the constitutional inhibition.

This section of the Constitution was added by way of amendment in 1874. Its effect was to deprive the legislature of its power to pass laws laying out, or altering, highways and to remit that power to the local authorities, as being a governmental, or administrative, function, which concerned the people of the locality. (*People ex rel., Morrill* v. *Supervisors,* 112 N. Y. 588; *Matter of Burns,* 155 N. Y. 28.) The legislature might pass general laws providing for the cases enumerated in the section and, by section 27 of article 3, " shall, by general laws, confer upon the boards of supervisors

of the several counties of the state such further powers of local
legislation and administration as the legislature may from time
to time deem expedient." It is manifest that the purpose of
the people, with respect to local governmental measures and
to the matters specified in section 18, was to restrict the legisla-
tive power and to confine its exercise to the passage of such
general statutes as the welfare of the body politic, as a whole,
might be deemed to require. The imposition of such a con-
stitutional restriction upon the legislative power was regarded
as necessary, in order to put an end to flagrant abuses in its
exercise. The provision expressed a fundamental idea in our
popular form of government; namely, to commit to local bodies
the discharge of functions, which can be as well, if not better,
discharged by them. For a variety of reasons, the state legis-
lature should not be concerned with the administration of
those local affairs, as to which there exist local legislative
bodies; whose acts, motived by the needs of the citizens, are
more sure to be pure and efficient. Notwithstanding the exist-
ence of general laws, the statute books were being filled by acts
operating upon particular and sectional interests. The abuse
became very evident in legislation affecting local highways;
as to which there was no justification for the action of the
legislature, in the presence of a general statutory system of
highway laws. Whether highways should be laid out, or
altered, are local questions, which should be determined by the
local authorities; not only with greater political propriety,
but in the better interest of the portion of the public to be
affected. That the present act is expressed in general terms is
not, and should not be, decisive of the question of its consti-
tutionality. That is a question which must be decided not by
the letter, but by the spirit, of the act. There is, of course,
the difficulty of laying down any definite rule, by which the
question of whether a law is local or general may be solved.
It was said by ANDREWS, J., in *Ferguson* v. *Ross* (126 N. Y.
at p. 464), that " the fact that an act operates only upon a lim-
ited area, or upon persons within a specified locality and not
generally throughout the state, is, in most cases, a reasonably

accurate test by which to determine whether the act is general or local." It was observed in that case, as it had been by Judge EARL, in *People* v. *N. & S. P. R. Co.* (86 N. Y. at p. 6), that each case must be determined upon its special circumstances. It has been held, with respect to the operation of section 18, that an act which embraces all things of a certain class, is a general and not a local act; although, by reason of some limitation based on population, or other condition, only a particular city, or the inhabitants of a single locality, can, at the time, receive its benefits. (*Ferguson* v. *Ross, supra; Matter of Church*, 92 N. Y. 1.) That is a rule, the justice of which need not, now, be gainsaid. It rather serves to emphasize the principle that, in passing upon a statute, its validity, or invalidity, under the constitutional provision, depends upon the special circumstances of the case; which, therefore, can constitute no precedent, except and unless those circumstances are seen to exist in and, therefore, to vitiate another case.

Although this act is drawn in general terms, if its provisions are such in number and in character as unduly, with reference to the constitutional purpose, to restrict its operation and, to all intents, to confine it to a particular locality, then, I think, it comes as much under condemnation, as though it designated the locality by name. While an act might be general, if it affected all towns of a class and that class was based on population, or some other condition, which might be recognized as possibly common to a class, or which might permit of classification; if it contain such added limitations as to restrict its operation to what must always be, in the nature of the case, a very limited number of specified localities, if not, in fact, one, then it is local within the constitutional sense. By the title of this act, its operation is limited to towns having a total population of 8,000, or more, inhabitants and containing an incorporated village having a total population of not less than 8,000 and not more than 15,000 inhabitants. Passing over any possible criticism upon the effect of the limitations in this title and coming to the body of the act, we find there a very

remarkable combination of restrictions and such as, if not, by the process of exclusion, serving to identify the particular part of the state to be affected by the law, certainly, very markedly localize its operation. There are, at least, seven conditions in the act; all of which must be met, in order that it shall become operative. The town must have a total population of 8,000, or more, inhabitants. It must contain a village which must be incorporated and. whose population shall not be less than 8,000 and not more than 15,000; but that village must not be in the county of Madison. The highway must be one, which extends within the town limits, but without the village limits, and for a distance of at least two miles and a half. The improvement may only be as to a portion of the highway not less than two miles and a half in length, lying without the village limits. This enumeration of restrictions is not only pretty extensive, but very peculiar, and the most casual view suggests a local rather than a general operation for the law. The provisions of the act may not extend to highways in incorporated villages, contained in such towns as are specified in the act; nor to all highways contained in the described towns. To quote the language of Mr. Justice WOODWARD, in the opinion delivered by him in the Appellate Division, "any highway of less than two miles and a half in length between the boundaries of an incorporated village, containing at least eight thousand inhabitants, in a township of at least eight thousand inhabitants, and the boundaries of such township, could not be improved under the operation of this statute. The whole operation of the statute is thus confined to the few townships in which there is a highway two and one-half miles long, outside of the limits of an incorporated village of at least eight thousand inhabitants, and in any event it cannot extend beyond the limits of the town in which it is put in operation; thus confining its operation to a very limited number of specified localities." The exception of the county of Madison singularly emphasizes an intention to guard against a possible general operation of the act. In my opinion, to call this act a general law would be absurd. It is a device to evade a wholesome

constitutional provision; so transparent as to be clear to the most ordinary intelligence. Enumeration of restrictions upon the application of the act has reached a point where it ceases to be classification and, as Mr. Justice CULLEN well suggested, serves the purpose of identification.

But it is said that the decision in *Matter of Church* (*supra*) justifies this kind of legislation. I do not think so and a comparison of the act which was in question in that case with the present act, clearly, shows fundamental differences, which distinguish them. The title of the act of 1875 was, "An act to confer on boards of supervisors further powers of local legislation and administration, and to regulate the compensation of supervisors." Its provisions were applicable "in any county containing an incorporated city of one hundred thousand inhabitants and upward, when any territory within such county and beyond the limits of such city has been mapped out into streets and avenues, in pursuance of law."

What comparison does that act, with its provisions permitting of so general an application, bear to the present act? The act in its application to the counties of the state, while, possibly enough, for the moment, available to one; contemplated a condition of things, which, not unreasonably, might be considered as possible generally, where a city had grown to the required size in population and the territory beyond its limits should be mapped out for avenues and streets. The act confers full powers upon the boards of supervisors; while this act deprives the local authorities of their vested and appropriate powers and the only resemblance between the acts lies in the territorial restriction. But the former act embodied a general idea, concerning the extension of the limits of such cities by the laying out of highways. There was an appreciable public purpose; the accomplishment of which was left to local officers. This legislation takes away from the local authorities the power to perform the work through their own officers, or to supervise the expenditure of the moneys for which the town is to become obligated. No case can be found to compare with this attempt to interfere with the self-govern-

ment of localities. Our attention is directed to a number of acts, which have been passed by the legislature, where their operation was made dependent upon limitations by population and which, it is urged, would be endangered by a decision that the act in question was local and, therefore, unconstitutional. I am not unmindful of this feature of the case. It is important, because it is, undoubtedly, true that the constitutional provision, under consideration, has somewhat suffered at the hands of the legislature, in efforts to evade its effect. So far as they have gone in a healthful and reasonably public direction, I recognize that it is too late to insist upon strict construction and that we must take up that work, at the present time, with a liberal view of the law and the situation. I admit that, where there has been a practical construction placed by the representatives of the people upon the constitutional provision, and where great public works in localities have been carried out through the assistance of large loans and investments of moneys, advanced upon the faith of the validity of the legislation which authorized them, it would not do for the courts to construe in too strict or illiberal a sense. But while the legislature, as previously suggested, has gone very far in the enactment of laws containing territorial restrictions upon their operations, I find none, and none are pointed out, with so many as we find in the present act. In so far as acts have been made, by their terms, applicable to counties, cities, towns or villages, according to their limits of population ; or to the cases of counties or towns, which adjoin cities of a certain population, although, by strict construction, they might be deemed to contravene the section of the Constitution, they will be saved from condemnation by the rule of construction, which determines their validity as general laws upon a consideration of the special circumstances and declines to view them as only local, because by reason of a limitation based on population, or some condition having reference to population, but one locality, apparently, may, actually, receive their benefits. The classification of cities by population is an idea recently embodied in the Constitution, and good reasons

exist why, in a general law, reference may be had to conditions of population, whether in counties, cities, towns or villages, or with respect to a proximity to cities of a certain growth. We shall adhere to the rule, now settled, that an act embracing all things of a certain class is a general and not a local act; although, by reason of some limitation, based on population or other condition, only a particular locality can, in the actual situation, receive its benefits (*Ferguson* v. *Ross, supra*); but, when restriction is imposed upon restriction, until, as in the present case, its generality is hidden and impossible, the courts should not hesitate to adjudge its invalidity. When such an act as this has been passed by the legislature, the question may well be asked whether the constitutional provision has come to be regarded as a dead letter and whether its continued violation by the legislative body may be justified upon such grounds. The question is, whether the constitutional provision shall continue to stand as a vigorous expression of the will of the people; or whether the legislature may evade its inhibition, with the approval of the judicial branch of the government. It is my judgment that when a constitutional question is presented to the court, it should be answered according to the view which takes in the purpose of the adoption of the constitutional provision and the consequences to the people of its disregard. I do not think it to be a safe principle of construction to adopt that the general form of the legislative enactment may save it from condemnation; when a willful and impolitic, or unnecessary, purpose to evade the constitutional mandate is to be seen through the transparent device. That would be too fraught with danger to the efficiency of the constitutional provision.

Under this view of the law in question, it becomes unnecessary to consider the other questions raised and the order appealed from should be affirmed, with costs.

O'BRIEN, J. (dissenting). I think that the legislature had power to enact chap. 286 of the Laws of 1897, and that is the only question in this case. The act is entitled, " An act to

provide for the widening and improving the highways in towns having a total population of eight thousand or more inhabitants and containing an incorporated village having a total population of not less than eight thousand and not more than fifteen thousand inhabitants." The learned court below has held that this act is in conflict with the Constitution, and, therefore, void. It is clearly an act providing for the widening and improving of highways in certain towns.

The legislature is inhibited from passing any private or local bill for this purpose. (Const. art. 3, § 18.) But this is not a private or local bill, since by its terms it applies to every part of the state where the conditions exist necessary to put it in operation, or where they may exist at any time in the future. It is just such a law as the very same section of the Constitution permits the legislature to enact. After enumerating various subjects upon which the legislature is forbidden to legislate by a private or local bill, the Constitution provides that " the legislature shall pass general laws providing for the cases enumerated in this section, and for all other cases which *in its judgment* may be provided for by general laws." Thus, it is plain that the Constitution permits the legislature to enact general laws on every subject which, by the terms of the section, it is forbidden to legislate upon by means of a private or local bill. The Constitution says that certain things shall not be done by a private or local bill, but that all these things may be done, providing the law is general in form. But it goes much further, since it provides that the legislature may pass a general law for all cases which *in its judgment* may be provided for by that form of legislation. Now, the case at bar is one which the legislature in its judgment provided for by the passage of a general law, and the whole argument against the validity of this statute is, either that the legislature was wrong in the exercise of its judgment, or that, when it passed in form a general law, it did not mean what it said, but was all the time seeking to violate the Constitution by the enactment of a private or local bill, and thus it has succeeded in its purpose.

The difficulty with this argument is, that it completely reverses the presumption that always prevails to sustain a statute until the courts are compelled by force of reason or authority to condemn it as in conflict with the fundamental law. Moreover, it introduces a new method for testing the constitutional validity of statutes, in that it asserts that the courts may institute an inquiry into the conduct and motives of the legislature in the enactment of a law, and if satisfied from the facts that the legislature intended to provide for a particular case in a particular locality, that the law passed for that purpose is not a general law, as it professes to be, but a private or local law, and, therefore, void under the restrictions of the Constitution.

This doctrine has led the court below in this case to try an issue with respect to the intention and motives of the legislature in the enactment of the statute, and having become satisfied from all the facts that there was but one place in the state, or at most but a few places where the conditions existed for the operation of the law, it was not, therefore, a general law as the legislature said it was, but a local law, and for that reason void. The argument against the validity of the statute may be made plainer by reference to the concrete case now before us. It is the case of five persons who state that they are residents and freeholders of the town of New Rochelle, and they ask the court to appoint commissioners for the purpose of improving a road under the statute. Their petition sets forth precisely the conditions necessary in order to set the statute in motion. The state of things, disclosed by the petition so exactly fits all the conditions of the statute that the learned Appellate Division was induced to institute an inquiry as to the facts upon which the legislature acted, and not being able to find any other place in the state where the same conditions existed, it concluded that the statute must have been passed to meet a case in New Rochelle, and hence in violation of the Constitution.

If an act of the legislature can be overthrown in consequence of the existence or non-existence of certain extraneous

facts or conditions, the procedure established by law for an inquiry as to all matters of fact should be observed. It is not the province of an appellate court, at least in the first instance, to decide what the facts are in any case. If it was competent or material to find how many places there are in the state in which the conditions exist to put the statute in operation in order to determine whether it was a general or local law, then that issue should have been tried in the regular way in the court of original jurisdiction, where the whole matter was open to proof, if the court had anything at all to do with the question.

But the learned court below determined on its own knowledge not only that New Rochelle was the only place where the law could be applied, but that it was the only place where the conditions ever would exist. In order to pronounce the law invalid the court must not only consider the present state of things but the future as well.

There is really no authority in any system of jurisprudence for assailing legislative acts upon such grounds. If the courts can go behind the legislative declaration on the face of a bill that it is a general law and institute an inquiry as to the purpose and motives of the legislature for the purpose of declaring it to be a local law, such a principle is destructive of that system of checks and balances by which the Constitution has assigned to each department of the government its proper powers and functions. The courts have no right to say that a law which the legislature has declared to be a general law is, nevertheless, only a local law because they can find only one place, or but a few places, in the state where it can be applied. It is not within the province of the judiciary to impute to the legislature a motive or purpose contrary to that expressed on the face of the bill, and so, when it declares a law to be general, it is not competent for the courts to say, upon an inquiry with respect to extraneous facts, that it was intended to be local. Any encroachment by one department of the government upon the rights and powers of another is simply usurpation. This court has often before been invited

to usurp the inquisitorial office of judging of the motives of the legislature and inquiring into the *bona fides* of that body in discharging its duties, but has always declined. In a well-known case where there was much more reason for embarking upon such an inquiry than there is in the case at bar, Judge DENIO answered the argument in these words, which seem to me to be a correct statement of the duty of the judiciary when called upon to review the acts of another department of the government: "If a particular act of legislation does not conflict with any of the limitations or restraints which have been referred to, it is not in the power of the courts to arrest its execution, however unwise its provisions may be, or whatever the motives may have been which led to its enactment. There is room for much bad legislation and misgovernment within the pale of the Constitution; but whenever this happens, the remedy which the Constitution provides, by the opportunity for frequent renewals of the legislative bodies, is far more efficacious than any which can be afforded by the judiciary. The courts cannot impute to the legislature any other than public motives for their acts. If a given act of legislation is not forbidden by express words, or by necessary implication, the judges cannot listen to a suggestion that the professed motives for passing it are not the real ones. If the act can be upheld upon any views of necessity or public expediency, which the legislature may have entertained, the law cannot be challenged in the courts." (*People* v. *Draper*, 15 N. Y. 545.)

The statute in this case is challenged on the sole ground that the legislature intended to and did pass a local law for improving a particular highway in the guise of a general law. That is a matter that the court has nothing whatever to do with, and if it were all true in fact it would not invalidate the law, since the Constitution expressly authorizes the legislature to do anything that cannot be done through a local bill by another form of legislation, namely, a general law. It is common experience that many general laws originate in some local necessity or in some local evil. They may have been intended to meet some particular case or supply some local

want, but they are not local laws for the very plain reason that the legislature has given to them the form of general laws, and the courts have no right to go behind the decision of the legislature. That body had the power to determine, when enacting this statute, whether a general law was necessary, and so it enacted such a law complying with the forms of the Constitution. It is not within the power of the judiciary to say that the legislature meant one thing and said another, or that there was no necessity for the legislation. That would be a direct attack by one department of the government upon the powers and functions of another, and a usurpation of authority subversive of the principles of the Constitution.

The decisions of this court are all in the same direction, and clearly sustain the statute now in question.

In *W. W. M. Co.* v. *Shanahan* (128 N. Y. 345) the question was whether a statute, which, on its face, appeared to be public, was not really passed to promote a private purpose. In that case the trial court did what has not been done in this, namely, tried the question and made findings that the act was private and passed for private purposes, and, therefore, unconstitutional and void. But this court reversed the judgment for the reasons hereinbefore stated.

The Constitution forbids the legislature from passing a private or local bill authorizing the laying down of railroad tracks. Chapter 225 of the Laws of 1893 enacts that any bridge company over a river connecting any city in the state containing more than one million inhabitants with any other city in the state, may lay tracks and operate a railway upon its bridge. Now, there never was the least doubt that the law was intended for but one place in the state, and that was a bridge across the East river from New York, and yet this court held it to be valid as a general law. (*In re N. Y. & L. I. Bridge Co.*, 148 N. Y. 540.)

The legislature can pass no private or local bill increasing or decreasing the allowances or compensation of public officers during their time of office. But chapter 710 of the Laws of

1892 authorizes that to be done in the fire department of all cities having a population exceeding nine hundred thousand. Of course every one knows that there were but two cities in the state to which this act could be applied, or that it was intended for, but this court held it to be a valid general law. (*In re Dobson*, 146 N. Y. 357.) It is impossible to make any distinction between the case now under consideration and numerous others in this court where such statutes have been held valid.

*Matter of N. Y. Elevated Railroad Co.* (70 N. Y. 328) is one of them and *In re Church* (92 N. Y. 1) is another. Indeed, the latter case was identified and admitted to be a law for a single county, since the conditions existed in no other county. Judge FINCH, in answer to arguments precisely such as are now made in this case, stated the principles upon which such laws are regarded and treated as general and not local : " A law relating to particular persons or things *as a class* was said to be general; while one relating to particular persons or things *of a class* was deemed local and private. The act of 1881 relates to a class, and applies to it as such, and not to the selected or particular elements of which it is composed. The class consists of every county in the state, having within its boundaries a city of one hundred thousand inhabitants, and territory beyond the city limits mapped into streets and avenues. How many such counties there are now, or may be in the future, we do not know, and it is not material that we should. Whether many or few, the law operates upon them all alike, and reaches them, not by a separate selection of one or more, but through the general class of which they are individual elements. The force of the law of 1881 is not localized in Kings county and confined to its territory. By its terms it applies equally to every other county which may prove to be within the constituted class. It is said there is but one such county ; and so it was said there was but one elevated railroad. Neither fact at all narrowed the terms of the law. Those terms in each case were broad enough to cover every county in the state if it had the required city and

the mapped territory on the one hand or its own elevated road on the other. The case cited adds example to definition, and, following its doctrine, we must hold the law of 1881 to be general and not local, and so not a violation of the Constitution."

We have recently upheld the validity of a statute which authorizes the expenditure of at least fifty-five million dollars to build a railroad in the city of New York. (*Sun Pub. Assn.* v. *Mayor*, 152 N. Y. 257.) That statute is in the form of a general law, just as this is, but no one ever even attempted to disguise the fact that it was enacted for that city alone. It provided for the building of railroads in cities containing over one million inhabitants and in that disguise it appeared as a general law. That statute conferred power on a great municipality to build a railroad. This statute, even if all that is said with respect to its local character be correct, conferred power on a small municipality to improve common roads. If the former law is valid certainly the latter is.

There were many weighty reasons for disapproving that law that do not exist in this case, and if the courts were disposed to indulge in the reasoning now invoked against the statute in question we could not have sustained it.

It would be tedious to enumerate all the cases in this court in which just such legislation has been upheld. Having sanctioned so many gigantic local projects that took the form of general laws, though clearly local in all their objects and purposes, it would seem to be inconsistent, if not unwise, to change the law now in order to defeat a statute that has no other purpose than the improvement of certain country roads. Whether it is a good law or a bad one, it cannot produce such public mischief as a decision which practically upsets all rules that have heretofore prevailed concerning the power of the legislature to accomplish by a general law what it is forbidden to accomplish by a local law. The evils of such legislation, if they exist, can be remedied in some other way than through an encroachment by the courts upon the province of the legislature.

It is idle to attempt to make any distinction between these cases and the case at bar. It is suggested that the legislature may pass a private or local bill, in the form of a general law, provided it be presented in that guise, by means of a classification based upon population alone. But in all the cases referred to there were other conditions besides population. It is said that in this case the operation of the statute is hedged in by seven conditions that exist only in one place. There were just as many in the *Church* case, if not more, as will be seen if it is thought important to count them. But why a statute surrounded by seven uncertain conditions that may or may not exist in various parts of the state is bad, while another statute, depending upon one certain condition that cannot possibly exist in but one locality, like a city containing not less than a million inhabitants, is good, it is impossible to understand. If there is any distinction between the two cases it is in favor of the former and against the latter.

Where a general law is operative only in a city containing not less than a million people, it is localized beyond any possibility of mistake. Not so with the statute now before us. Whether it applies to a few places or to many places depends entirely on the accuracy of the investigation into the facts made by a court on appeal, without any evidence in the record as to these facts, but upon its own knowledge, which may or may not be correct. So that any attempt to make a rational or sound distinction between this case and those referred to must utterly fail. If there is any public necessity for invalidating a statute providing for the improvement of certain country roads, which I cannot perceive, there is only one way to do it, and that is to say that all our previous decisions with respect to this class of legislation were wrong, and should be overruled. It is simply impossible to give any satisfactory reason for holding a local act, disguised in the form of a general law based upon population, valid under the Constitution, while another local law, disguised in some other form, or by some other conditions, invalid. It is trifling with the Constitution to say that whether a law is general or local depends

upon the form of the disguise, and to hold that, if the disguise is so open and notorious that it can deceive no one, and is readily detected, as in those cases where the act applies to cities of not less than a million inhabitants, it is a good law, while if the conditions take a broader range so as to make it· applicable more generally, as in this case, it is a bad law, is a process of reasoning that, to say the least, is not very satisfactory or persuasive.

It is obvious that all legislation of this character must rest upon some basis more substantial than mere verbal distinctions founded upon conditions of population and other conditions. This case illustrates the principle. It is one of the functions of all civilized governments to build or improve highways generally or locally. The legislature of this state possesses that power in the broadest sense. It has the same power to improve one highway in a town that it has to improve a highway from one boundary of the state to the other. The only limitation upon this power is with respect to the mode of procedure. The Constitution says that it shall not proceed to build or improve either by a private or local bill, but that it may accomplish both purposes by means of a law, general in its terms. The decision in this case is virtually that the legislature cannot improve the road in question by any form of legislation whatever. If it passes a bill for that purpose which is private or local on its face, it is clearly unconstitutional. If it passes a general law, as it has in this case, the courts will say to the legislature that they have examined all the facts and have concluded, that while the law is general on its face, yet it was not in good faith intended to operate generally, either now or in the future, and that they have become satisfied that in spite of the legislative declaration it is a private or local law in disguise, and, therefore, void. Thus, the legislature is unable to move in one direction or the other, if the courts for any reason are against the law. The plain meaning of the Constitution is, that the legislature shall be the sole judge of the necessity of every law, and when it passes a law, general in form, though at the time applicable only in a limited locality, it is not open to question in the courts.

The arguments against the decision in this case might be multiplied, but I have been content to outline them. It is enough to say, generally, that it is founded on a dangerous and vicious principle. It is nothing less than an assertion by the judiciary of the power to review the work of the legislature upon an inquiry as to extraneous facts and to set aside a statute, if satisfied that it was not enacted in good faith or that the professed motives for its passage were not the real ones, or that the real purpose was private, while that stated is public. Such a principle is subversive of every independent power conferred upon the law-making body by the Constitution. We have no more power to annul a statute upon such considerations than we have to inquire whether it is not the product of corruption in the legislature or in the executive department.

The scheme of representative government under a written constitution dividing all power among three departments has been in operation on this continent for more than a century. It is the one great feature in the Federal Constitution that was new and that has commanded the admiration of the world. It is the distinctive feature in every State Constitution, and in none of them has this division and distribution of power been more carefully observed than in our own. Under this system we have had all kinds of laws enacted by Congress and by state legislatures, and the courts have freely exercised the power of subjecting them all to the test of the Constitution. But it is safe to say that never before in any court of last resort has a statute been set aside as void upon an inquiry of fact with respect to the existence of the conditions necessary to give it operation, or on the ground that the judgment of the law-making body was improperly or unwisely exercised, or that the professed motives for its enactment were not the real ones.

It is too plain for concealment that these are the grounds upon which the statute in question has been set aside. Whether the conditions which are necessary to put this law in operation exist only in one county, or in twenty counties, is a fact that

does not appear on the face of the statute. It is ascertained only through an independent extraneous inquiry conducted by the court on appeal, and, even after it is concluded, no one professes to know or ventures to assert anything with respect to the localities where the conditions existed; whether few or many at the date of the enactment of the law, and much less as to the places where the conditions may exist ten years hence.

It cannot be denied that the law on its face includes every county but one, and is operative in every locality where the conditions exist or may exist in the future, and that the only objection ever made to it was that, as *matter of fact*, these conditions do not exist in a sufficient number of places to give the statute the character of a general law, and, therefore, it must be a local law, the declaration of the legislature to the contrary notwithstanding. If the courts may do that in this case, they may do it in every case, and hence I repeat what has been already stated, that such a principle subjects the action of the legislature, in all cases, to the control of another department of the government.

The order appealed from should be reversed.

PARKER, Ch. J., HAIGHT and VANN, JJ., concur with GRAY, J., for affirmance; BARTLETT and MARTIN, JJ., concur with O'BRIEN, J., for reversal.

Order affirmed.