HUGH WHITE *vs.* THE SYRACUSE AND UTICA RAILROAD
COMPANY.

The act of the legislature, of April 12th, 1851, authorizing the several railroad
corporations of this state to subscribe to the capital stock of the Great West-
ern Railroad, Canada West, was constitutional and valid.

THIS was an appeal by the plaintiff from an order made at a
special term, dissolving an injunction.   The act creating the de-
fendant a body corporate, was passed on the 11th of May, 1846.
On the 12th of April, 1851, the legislature passed an act, enti-
tled " An act to authorize the railroad corporations of this state
to subscribe to the capital stock of the Great Western Railroad,
Canada West."   This act provides that any railroad corporation
of this state may, with the consent of persons owning two-thirds
of its stock, subscribe to the stock of the Canada road, not ex-
ceeding five per cent of the capital of the corporation so sub-
scribing, provided that the eastern termination of the road shall
be at some point on the Niagara river.   After the passage of
this act, and in pursuance of its provisions, the directors of the
Syracuse and Utica Railroad Company sent a circular to all the
stockholders in the company, asking their consent to subscribe
for a portion of the stock of the Canada railroad ; and on the 10th
of January, 1852, after having procured the consent of two-thirds
of the stockholders, the directors subscribed for $75,000 of the
stock.   On the 6th February, 1852, and after the company had
paid the calls, amounting to $7500, upon their subscription, the
plaintiff, who was a stockholder in the company, commenced this
action, in which he demanded a judgment of the court, declaring
the act, under which the subscription was made, unconstitutional
and void, and requiring the directors to restore the money paid
on their subscription, and enjoining and restraining them from
making any further payments.

An injunction was issued, according to the prayer of the com-
plaint ; which was subsequently dissolved by the court, on mo-
tion, at special term ; and the plaintiff appealed.

*By the Court,* EDWARDS, J.   The first ground taken by the plaintiff is that the act in question is in contravention of that provision of the constitution of the United States, which declares that no state shall pass a law impairing the obligation of contracts.

The charter of the defendant, in express terms, reserves the right to the legislature to alter, modify or repeal the act, and subjects the company to all the liabilities imposed by the revised statutes, amongst which is the provision that every charter of incorporation that shall thereafter be granted, shall be subject to alteration, suspension and repeal, in the discretion of the legislature. (1 *R. S.* 600, § 8.)   It is under these provisions that the defendant contends that the legislature had the constitutional right to pass the law in question.   The plaintiff, on the other hand, contends that the legislature has exercised a greater power than it reserved to itself.

A charter of incorporation, like a contract between individuals, is to be construed according to its spirit and meaning, as well as its letter.   And in this point of view, when it is asked by the plaintiff's counsel whether the legislature can convert the defendant into a banking, insurance or mining company, I answer, most unhesitatingly, that it cannot; and for the obvious reason that such an act would create a new company, of a new and distinct character.   But no such thing is proposed in this case.   If the law in question is sustained and carried into effect, the company will remain the same as it now is, as to its character, structure, objects and business.   It will have the same road, and the same buildings and property, with the same agents as it would have if the law had not been passed.   There will be no foreign element introduced into its organization.   It is not like the case of a subscription to the stock of a moneyed or any similar corporation.   The effect of the subscription will be that the surplus capital of the company will be used to increase its business, and to promote the objects for which it was chartered.   The new road, from its location and situation, will furnish additional facilities of travel to a large population, spread over an extensive tract of country, and will probably, and almost necessarily, increase the number of persons who will come to this state,

and pass over the road of the defendant. This was the object, and will undoubtedly be the effect of the law.

The legislature, in chartering the defendant, authorized it to exercise the right of eminent domain in order to make and construct its road. It did so, not for the purpose of promoting the individual interests of the stockholders of the company, but for the purpose of benefiting the public at large, by affording increased facilities for the transportation of passengers and property. It is upon this ground, and this alone, that the right of the state to authorize the taking of private property for the purposes of a railroad has been upheld. And it is reasonable to suppose that a similar regard for the general good of all persons residing in the state, induced the legislature to pass the law in question. But, in doing so, it did not absolutely impose an obligation upon the company. It left it to the company itself to decide, by the consent of two-thirds of its stockholders, whether or not it would be for its benefit to take advantage of the law; and the result shows that what the legislature deemed to be for the public interest, the stockholders of the corporation have considered equally conducive to their private interest; for, with the exception of the plaintiff, all the stockholders have assented—at least no others have dissented.

It is said, however, that according to the rule laid down in *The Hartford and New Haven Railroad Co.* v. *Croswell,* (5 *Hill,* 381,) it is necessary that all the stockholders shall assent before the company can avail itself of the new law. In that case the court say, that no radical change or alteration can be made or allowed in the charter of a corporation, by which new and additional objects are to be accomplished, or responsibilities incurred, so as to bind the individuals composing the company, without their assent. But in that case the legislature had not reserved to itself the right to alter the charter of the company; and it follows, necessarily, that such power could only be derived from the company itself, the other party to the contract. The same remark applies to the case of *The Middlesex Turnpike Co.* v. *Locke,* (8 *Mass. Rep.* 268.)

It is next contended that the law in question is void because it was not passed by a vote of two-thirds of the members elected to the legislature.

At the time that the defendant was incorporated, the constitution of 1821 was in force, and it is contended that its provisions form a part of the contract between the company and the state. I suppose that when the right to alter the charter is reserved to the legislature, the meaning is that it shall be exercised by the body of men who answer that description at the time that the alteration is to be made, governed by the rules which shall at *that time* be prescribed by the fundamental law of the state. Such, as I understand it, is the spirit and meaning of the contract. But even if it were otherwise, or rather, if as the plaintiff contends, the then existing constitution was contemplated by the parties, it must also have been contemplated by them that the sovereign power of the state might change the fundamental law at any time. And it would necessarily become a part of the contract that any future legislature might alter the charter of the company, provided that it did not violate any provision of the constitution in force at the time of the alteration. It is said, however, that the constitution of 1836 provides that nothing therein contained shall affect any charter theretofore granted by the state. But on reference to the instrument itself it will be seen that this forms a part of a general saving provision, intended to prevent the vested rights of all persons, natural or artificial, from being impaired by its *direct* operation; and there is nothing in that constitution which does directly affect the defendant. The charter of the company remained precisely the same immediately after the adoption of the constitution, as it was immediately before. It was never intended that all charters, so far as regarded the instruments of external control to which they were subject, should remain the same as before. The new constitution has changed the whole judiciary system of the state; and will it be contended that the defendant is not subject to the jurisdiction of the courts as now organized, because they differ from those which were organized under the constitution

White *v.* Syracuse and Utica Railroad Co.

existing at the time that the charter of the defendant was granted? If the courts, as at present organized, ever interfere to control the illegal action of the defendant, it will be affected by the new constitution as much as it will be by the acting of the legislature in passing the law in question.

But it is said that this is a local and private bill, and embraces more than one subject, and that therefore it is unconstitutional.

It is clearly not local, for it extends to every part of the state; and it seems to me equally clear that it is not private. A bill in reference to a single private corporation would be private. But a bill in reference to all corporations would unquestionably be public. And suppose that it applies to all corporations of a particular class or kind, will it be any the less public? Would a bill applicable to all banking or insurance companies be private? It seems to me that no one will contend that it would. And there is no good reason why a bill applicable to all railroad companies should be so regarded. It is neither within the mischiefs intended to be provided against, nor within the letter, or spirit and meaning of the constitution.

It seems to me equally clear that the law in question embraces but one subject. The counsel for the plaintiff contended on the argument, that each railroad company in the state was a subject of the bill, within the meaning of the constitution. Suppose, by way of testing this view of the case, that a bill should be introduced into the legislature for the restriction of the elective franchise to freeholders, and that it should be discussed by a large portion of the members; there would be but one subject for discussion, although there would be many speakers. But suppose that the law should pass, and that all persons not freeholders should be deprived of the right to vote, will it be said that there would be as many subjects of the bill as there would be persons affected by it? The subject of a bill does not mean the number of persons who are subject to its influence. It means the subject matter of the bill; and the subject matter here is clearly single. It is the subscription to the stock of the Canada railroad company.

I think that the law in question is constitutional and valid, and that the order made at the special term dissolving the injunction should be affirmed with costs.

[NEW-YORK GENERAL TERM, February 7, 1853. *Edwards, Mitchell* and *Roosevelt,* Justices.]