## LIVINGSTON *vs.* THE BANK OF NEW YORK.

An affidavit stating "upon information and belief" that a bank is insolvent, is not sufficient evidence to authorize the granting of an injunction and the appointment of a receiver; especially when it is in direct contradiction to the regular official reports of the bank, made under oath.

Where a suspension of specie payments by banks is general, and nearly universal, the mere fact of suspension by a bank of circulation is not proof of insolvency.

Livingston *v.* Bank of New York.

Within the meaning of the act of 1849 a bank is clearly solvent, and consequently not to be proceeded against as insolvent, if it has property more than sufficient to satisfy all demands.

In such a case, where no fraud or injustice is alleged, the court will not deem it expedient to grant a temporary injunction, or an order to show cause why an injunction should not be issued; although the bank refuses to redeem its circulating notes in specie.

THIS was an application for an order requiring the defendant to show cause why an injunction should not be granted and a receiver appointed.

*John Livingston,* for the plaintiff.

ROOSEVELT, J. The plaintiff being, as he alleges, the owner of two " circulation notes" of the Bank of New York, each of the denomination of $100, on the afternoon of the 13th of October, between the hours of one and two o'clock, presented them to the paying teller of the bank, demanding specie for them, and was refused. He further alleges, on information and belief, that the bank is insolvent; and therefore prays that it may be dissolved, that it may be enjoined from exercising any of its corporate functions, from collecting its debts, from paying out or transferring its money and effects, and that its assets may be appropriated to pay its liabilities " according to law." As a preliminary to a final decree, he now moves, *ex parte,* on the sworn statements of his complaint, for an order of the court requiring the bank to show cause, at an early day, why a receiver should not be appointed, " to take charge (in the interim) of its property and effects," and the immediate question is, is such an order, on the case made, a matter of strict legal right, and if not, is it nevertheless, under all the circumstances, fit and proper, as a matter of mere legal discretion. The plaintiff, no doubt, is entitled to the same remedy, by the ordinary suit at law and judgment and execution against the bank, as against any other debtor. He has the advantage, too, in such action, of greater dispatch than an ordinary creditor. He is freed from the common ob-

struction of a sham defense. In *twenty days* after the first step taken, the law declares peremptorily that "judgment *shall* be rendered for such demand with interest and costs, unless the judge shall be satisfied by affidavit, setting forth the facts, that there is a good defense, on the merits, to the demand, and shall thereupon direct a stay of the judgment until a trial can be had. And even in that case—a case seldom likely to occur—the issue joined, whether of fact or law, "*shall* have preference over all other causes." Appeals too—another mode of procrastination—are also restricted, by requiring the certificate of a judge "that there is probable error," and satisfactory security for the payment of the demand, in the event of final judgment, "with interest at the rate of ten per cent, and costs."

These strong provisions to insure a speedy recovery are applicable "to any proceeding for the recovery of any demand" against a bank "issuing any kind of paper credits to circulate as money." And it will thus be seen that, as against that class of banks, every depositor, as well as every bill holder, may ordinarily obtain an execution in twenty days from the time of demand and refusal of specie, (which execution, by the terms of the code, may be made returnable within the further period of sixty days,) and that the time of payment may accordingly, by legal resistance, be postponed in that manner for three months, or thereabouts, and no longer.

Whether these summary requirements of the act of 1849 were intended to apply to the higher courts alone, may admit of some doubt. It is clear, however, that they do not take from the creditor of a bank his ordinary remedy in the minor courts, for $500 and under—a remedy which, without going into details, it is presumed, is at least as prompt as any in the supreme court.

What occasion is there, then, for any extraordinary measures, beyond those already referred to, in favor of the present plaintiff or against the present defendants? The bank, we are told, is insolvent, but how is that shown? The plaintiff's "information and belief" is surely no evidence; espe-

cially when in direct contradiction to the regular official reports of the bank, which, being made under oath, and published by express direction of law, are, it is presumed, entitled to at least as much weight judicially, as the unknown and unsworn informant of the plaintiff.

We are left, then, to the mere legal inference of insolvency, resulting from the suspension of specie payments by a bank of issue.

Is such the necessary inference from suspension, no matter what the bank's assets may amount to, in cases where suspension is general, and nearly universal, throughout the state and every other section of the union ?    It seems to me that it is not.    The statute of 1849, which, being subsequent in time, and especially directed to the case of banks of issue, and covering precisely the same ground, would seem to supersede on these points the older enactments.    This statute provides that upon proof by the abortive return of an execution, or by other satisfactory evidence before it is returned, that an execution for " any debt or liability exceeding $100" cannot be satisfied out of any property of the bank thus sued, the judge " shall at once make an order declaring the insolvency of such corporation or association ;" to be followed, of course, by the appointment of a receiver, to wind up its business.    Under another section, however, a creditor, without waiting the first twenty days, or the subsequent sixty days, if his demand exceed $100, may, at any time after ten days from the refusal of payment, apply for an order enjoining the bank and declaring it insolvent; and on such application the judge, " if in his opinion on the facts presented it be expedient, in order to prevent fraud or injustice," may grant an order for a temporary injunction. After which, on hearing of the parties on short notice, he shall determine whether the bank be " clearly solvent or otherwise." And even if he determine it to be clearly solvent, he is required to continue the temporary injunction, if one have been granted, until full payment of the debts and costs.    But if he

determine that it is " not clearly solvent," he must not only continue the injunction, but appoint a receiver.

Reading these provisions, can any one say that, by a true interpretation of the law of which they form a part, the mere suspension of specie payments of itself, and by itself, settles the question of insolvency ?   If so, why require, under one section, the issuing of an execution and proof of inability to satisfy it; and under another, first a delay of at least ten days, and then a hearing on further notice, and an examination of the " officers' books, papers, accounts, assets and effects ?" Banks of issue in this state are the creatures of the law.   The same law assumes that while accommodating the public, they will yield an income to the stockholders; and how is such income to be realized unless they are allowed to loan, not only their capital, but a portion at least of their deposits ; and that, too, not returnable on demand, but on time ?   It assumes, therefore, in the very organization of such institutions, that in case of a panic or sudden rush, the banks, although amply able and clearly solvent, may not have specie enough on hand immediately to satisfy all claims.   Hence the act of 1849, instead of authorizing a permanent injunction, upon a mere refusal to pay in specie, expressly requires further " proof satisfactory to a justice of the supreme court," that the demand of the plaintiff " cannot be satisfied out of *any property* of the defendant," or that, after a full hearing of the parties, it shall appear, and be so determined, that the institution is " not clearly solvent."

In the present case, it is now admitted that the bank has *property* not only sufficient, but in every respect more than sufficient, to satisfy all demands.   Within the meaning of the statute, therefore, it is " clearly solvent," and of course not a subject for the extraordinary decree prayed for in the complaint.   For that reason, as well as for the reason that no " fraud or injustice" is alleged or pretended, it is, in my " opinion, on the facts presented," not only " not expedient," but on the contrary highly inexpedient, to grant a " temporary

Livingston *v.* Bank of New York.

injunction," or an order to show cause why such an injunction should not be issued.

The revised statutes on this subject, I have said, would seem to have been superseded by the later provisions of the statute of 1849. This position requires some qualification. The late statute is confined to demands " exceeding one hundred dollars," and to " corporations and joint stock associations issuing bank notes ;" whereas, the previous statutes were applicable to " *any* creditor" of any amount, and to *any* loan, banking or insurance " corporation," whether issuing notes or not. It must be obvious, however, that where a statute says that a certain thing may be done after twenty days, or after sixty and twenty days, or after ten days and a full hearing of both parties, precisely the same thing cannot be done under a previous statute, *ex parte*, and without waiting eighty, twenty, ten, or any number of days. There is an obvious repugnance, operating to that extent as an implied repeal.

The present application, therefore, in that view also must be dismissed. The plaintiff's demand exceeds $100—it is founded, not on a deposit, but on two circulating notes—and yet it is made, instead of ten days after the refusal of payment, in less than 24 hours. The law, it is true—and the statute of 1849 is certainly not an exception to the principle— aids the vigilant and not the slothful. It is possible, nevertheless, even in such a case, to rise too early.

Banks of issue, it will thus be seen, where they are acting in good faith and are " clearly solvent," have a little time to breathe, after suspension, although not very long. On all except small demands, they must have twenty days, and with the approbation of the sheriff, may have sixty more. And as against all their creditors, except note holders, if certain views of the constitution are correct, the legislature, should they deem the public good to require it, may extend the indulgence still further. On this point, however, I express no opinion, further than to say, that any legislation to be valid must conform, first, to the federal constitution prohibiting all the states

from passing any law "impairing the obligation of contracts;" and secondly, to the state constitution prohibiting the legislature, whatever may be the true interpretation of the prohibition, from passing any law "sanctioning in any manner, directly or indirectly, the suspension of specie payments by any person, corporation or association, issuing bank notes of any description."

[NEW YORK SPECIAL TERM, October 19, 1857, *Roosevelt*, Justice.]