Larremore, J.
A temporary injunction was granted in this action, and application is now made for its dissolution.
The defendant was incorporated by an act of the legislature of this State, passed April 12, 1848 “for the purpose of building, equipping, furnishing, fitting, *330 purchasing, chartering and owning vessels, &o., to be run and propelled in navigating the Pacific Ocean.
By subsequent acts, the said corporation was authorized to increase its capital stock, and the same was finally increased to twenty million dollars.
On May 11, 1872, an act was passed authorizing a reduction of said capital stock, in the following words:
“The Pacific Mail Steamship Company is hereby authorized to reduce its capital stock to ten million dollars, upon first obtaining the written consent of stockholders owning two-thirds of said capital stock, and to that end may buy in, cancel and extinguish its shares, so far as the same can be purchased at prices not exceeding the par value thereof, and the shares so purchased shall be retired and extinguished in reduction of the capital stock of the company, and shall not be issued again.”
The plaintiff, who is a stockholder in said company, alleges that large debts are constantly accruing to the laborers and operatives for service performed for said corporation, amounting to many thousands of dollars in each month.
This is followed by an exhibit showing the resources and liabilities of said company.
The plaintiff then alleges on information and belief, that it is the intention of the officers of said company, and they threaten, to use all the available funds and assets and the proceeds thereof, for the purchase of shares in reduction of said stock, and also to borrow x^money for that purpose.
Section 9 of said act of incorporation provides, that the stockholders shall be jointly and severally individually liable for all the debts that may be due and owing to all said laborers and operatives for services performed for said corporation.
Section 12 provides that no stockholder shall be personally liable for the payment of any debt con *331 tracted by said corporation, which is not to be paid within one year from the time the debt is contracted, nor unless a suit for the collection of such debt shall be brought against said corporation within one year after the debt shall become due ; nor shall a suit be brought against a stockholder for any debt so contracted unless the same shall be commenced within two years from the time he shall have ceased to be a stockholder; nor until an execution against the corporation shall have been returned unsatisfied in whole or in part. \
The plaintiff avers that the result of the reduction of said stock will be to increase the liability of the remaining stockholders created by said section 9, of said act of incorporation; and that the act authorizing said re-, duction is unconstitutional and void.
The affidavit of Meeteer annexed to the complaint, states that Stockwell, the president of said company, has been for a long time past engaged in making purchases of said stock of the company, and that the affiant has been “informed by a very great number of persons ’ ’ that said Stockwell has used large sums of money belonging to said company for the purchase of said stock, borrowed stock of the company, and had transferred to his own name, upon the books of the company, a large amount of stock which he had borrowed for that purpose, and that he had borrowed from other sources, through his position as president of said company, large sums of money with which to purchase said stock.
The defendant, in an affidavit read in opposition, denies in positive and unequivocal terms the averments of the plaintiff in reference to the purchase of said stock, or the use of the moneys of said company for that purpose.
Defendant also avers that prior to the issuing of the injunction herein, the written consent of more than two-thirds of the stockholders was obtained, authorizing *332 said company to reduce its capital stock to ten million dollars.
That the laborers and operatives of said company are fully paid monthly, and nothing is past due and unpaid for services performed by them.
Annexed to this affidavit and forming a part thereof is an exhibit, showing the resources and liabilities'of said company, from which it appears that it has over three million dollars in cash, and property of the value of twenty-one millions one hundred and ninety-seven thousand one hundred and fifty-two dollars and seventy cents, with a net increase in the quarterly earnings for May 1,1872, above .that of May 1, 1871, of four hundred and seventy-two thousand nine hundred and seventy dollars and forty-four cents.
This injunction cannot be sustained on the merits of the case.
The company is solvent and possessed of a large amount of property; the laborers and operatives have ‘been fully paid, and there is nothing in the moving papers upon which to found a reasonable presumption of the present or future inability of said company to discharge its liabilities.
A mere apprehension in this respect is not sufficient to warrant judicial interference.
The allegations as to the intention of defendant to use its assets to reduce the stock, are made on information and belief, and the sources of such information and grounds of belief are not stated.
This alone would be fatal to plaintiff’s application (Campbell v. Morrison, 7 Paige, 157; Bank of Orleans v. Skinner, 9 Id., 305; 1 Barb. Ch., 617; Livingston v. Bank of New York, 26 Barb., 304; Roome v. Webb, 3 How. Pr., 327; Rateau v. Bernard, 12 Id., 464; Crocker v. Baker, 3 Abb. Pr., 182; People v. Mayor of New York, 9 Id., 253).
The equities are denied, and upon that ground the *333 defendant is entitled to a dissolution of the injunction (Finnegan v. Lee, 18 How. Pr., 186; Blatchford v. New York & New Haven R. R. Co., 5 Abb. Pr., 276).
It is claimed, however, that the act of May 11, 1872, which authorized the reduction of said stock, is unconstitutional and Void, for the reason that it impairs the obligation of the contract made by the parties hereto.
In the said act of incorporation, the right at any time to alter or repeal it was expressly reserved to the legislature, and plaintiff’s purchase of stock was made subject to the exercise of such right, in such manner as the legislature might deem essential and expedient (Buffalo & N. Y. City R. R. Co. v. Dudley, 14 N. Y. [4 Kern.], 348). Such a reservation is not a repugnant condition, but only a limitation (McLaren v. Pennington, 1 Paige, 105).
The legislature had the right to modify the original charter, and its action was valid and binding upon the stockholders, unless it appears that such action was contrary to the fundamental law of the State (Poughkeepsie & Salt Point Plankroad Co. v. Griffin, 21 Barb., 454).
Such modification or alteration having been assented to by two-thirds of the stockholders, is valid and binding upon those who did not assent (White v. Syracuse & Utica R. R. Co., 14 Barb., 559; see, also, 14 N. Y. [Kern.], 349, supra).
I must assume (in the absence of proof to the con trary) that the directors intend to act within the scope of their authority, and none of the cases recognize the right of the plaintiff to complain, unless he has been injured.
And this leads to the consideration of his cause of action.
He claims, that by reason of the alleged reduction, he will become liable for double the amount of the debts provided for in said section 9 of the charter.
*334 I cannot see how such a result must necessarily follow the act complained of.
His individual liability for all such debts was fixed prior to the act of May, 1872, and was then, as it is now, subject to the limitations contained in said section 12, and dependent in every case upon the solvency of the company.
His right to claim contribution is in no way impaired, nor (if defendant’s exhibit of property is correct) is it ever likely to be enforced.
The act in question merely confers authority upon the company to reduce the stock, if two-thirds of the stockholders consent. To that end, stock may be bought in, “ so far as the same can be purchased,” and such shares shall be retired and extinguished, and shall not be issued again.
This will operate as a merger of the stock thus retired, and the remaining shareholders represent, and are entitled to, the whole property, in proportion to their respective shares.
Nor can I assume that the assets of the company will be used for the purpose of such reduction.
The time within which it may be done is not limited by the act, but may (for aught that appears), extend throughout the period of said company’s corporate existence.
Until proof of violation, the presumption of law is that the directors will not exceed their authority.
They may intend to use the net earnings of the company, or some portion thereof, from time to time, to purchase the stock in question.
I do not think the legislature has exceeded the authority reserved in the charter of incorporation.
The act authorizing the reduction does not make defendant a new company, or change or pervert its original business, as it did in the case of Hartford & New Haven R. R. Co. v. Croswell, 5 Hill, 383.
*335 The company remains the same in its character, object and business.
No obligation was imposed by the act.
It left it to the company to say whether or not the stock should be reduced.
This has been done in the manner prescribed, and may have been intended ultimately for the benefit of the stockholders.
Upon the papers presented, I think the defendant is entitled to a dissolution of the injunction.
Injunction dissolved.