EDWARD A. STAPLETON et al., Plaintiffs, *v.* ELIZABETH F. PINCK- NEY, as Commissioner of Jurors of the County of Albany, Defendant, and NATHANIEL L. GOLDSTEIN, as Attorney-General of the State of New York, Intervener, Defendant.

Supreme Court, Special Term, Albany County, April 8, 1944.

M. *Michel Dobris* and *Robert E. Whalen* for plaintiffs.

*Walter L. Collins, County Attorney (Frank Pedlow* of counsel), for Elizabeth F. Pinckney, defendant.

*Nathaniel L. Goldstein, Attorney-General (Wendell P. Brown* of counsel), intervener, defendant in person.

BERGAN, J. As taxpayer of Albany County, plaintiffs maintain this action to restrain the defendant Commissioner of Jurors from carrying out the provisions of chapter 206 of the Laws of 1944. The Attorney-General has intervened and has been added as a defendant. The statute enacts numerous provisions affecting the office of commissioner of jurors and makes provisions with reference to the preparation of trial and grand jury lists, and to eligibility of jurors. Plaintiffs say that the statute is a local bill for the selecting, drawing and summoning of jurors prohibited by section 17 of article III of the New York Constitution; and that it is a county law, local or special in terms or effect, within the prohibition of subdivision (b) of section 1 of article IX.

The statute (§ 12) applies " to all counties in the state " which have: (a) a population of not less than 200,000; (b) a population of not more than 250,000; and (c) a city with a population of 125,000 or more. There is no dispute among the parties over the point that Albany County is now the only county of the State which can meet these three conditions and the Act takes effect immediately. No issue of fact is raised by any of the pleadings.

The Constitution of 1821 required a two-thirds vote for a bill appropriating money for a " local or private " purpose and this was the first constitutional limitation upon the New York Legislature in respect of local laws. The Constitution of 1846 required that local or private bills treat of one subject and express that subject in the title, and in one of the numerous amendments made in 1874 to the Constitution of 1846, the Legislature was prohibited from passing private or local bills in regard to certain enumerated matters. Among them were the selection, drawing or summoning of jurors. The amendment of 1874 is now, with but a single change that has no importance here, section 17 of article III of the Constitution.

What is a " local law " or " special law " very early became a troublesome problem of definition to the judges who dealt with it. Various approaches were made. Its inherent difficulty was conceded on all sides. In 1870 Judge Folger thought the difficulty so marked that definition up to that time had been seldom attempted judicially. (*The People* v. *Supervisors of Chautauqua*, 43 N. Y. 10, 16, 21.) There is here the suggestion that an act is local if it relates to a portion of the people of the State, or their property, " and may not," by subject, operation or immediate and necessary results, have general effect. A definition had been undertaken by Chief Judge Davies in *The People* v. *Hills* (35 N. Y. 449, 451) as an act having no force beyond a particular city or county, a view followed in *The People* v. *O'Brien* (38 N. Y. 193). Judge Earl felt a general law relates to things " as " a class; a special law to things " of " a class. (*Matter of N. Y. Elevated R. R. Co.*, 70 N. Y. 327, 350.)

Later, Judge Earl, again adverting to the difficulty of definition, felt that a local act is one operating only within a limited territory, or in a single city or county, or in two or three counties. (*People ex rel.* v. *Newburgh, etc., Plank Road Co.*, 86 N. Y. 1, 6.) Judge Francis M. Finch said the best way was to add examples to definitions. (*In the Matter of the Application of Church*, 92 N. Y. 1, 4.) Judge Andrews thought it was expedient to leave the matter of definition to a considerable extent open, to be determined specially in each case. (*Ferguson* v. *Ross et al.*, 126 N. Y. 459, 464.)

Perhaps because it was so hard to state a simple rule the court tended to take an extremely literal view of the question, an integral part of which view seemed to be that the law must be local in terms to come within the constitutional ban. Legislative ingenuity rapidly filled in the gap by devising general language, or " classifications " of one kind or another, which were thinly veiled cloaks for local legislation and which were held to be valid because it was literally possible to read the language as having general application. Often the result was reached by ignoring facts of great notoriety and of common knowledge.

This process was noticeable before the amendment of 1874. *White* v. *Syracuse and Utica Railroad Co.* (14 Barb. 559, 563) and *Williams* v. *The People* (24 N. Y. 405) are examples. But the trend became marked when the impact of the 1874 amendment was felt on legislative practice. An Act of 1875 (ch. 606), granting the right to lay down railroad tracks to " any ele-

vated steam railway " which was " now in actual operation ", was held valid although it was a matter of general and common knowledge that there was but one such steam elevated railroad in the State. (*Matter of N. Y. Elevated R. R. Co., supra, p.* 352.) The court did not know and it could not assume the Legislature knew there was only one such railroad.

A statute applying to counties having cities of 100,000 and territory beyond the city mapped out into streets and avenues was held valid, although there was only one such because its " terms " were not so limited. (*In the Matter of the Application of Church, supra.*) A statute relating to electric wires and conductors in cities over 500,000 was not deemed local because it was " general in its terms." (*People ex rel. N. Y. Elec. Lines Co.* v. *Squire,* 107 N. Y. 593, 601.) In *Ferguson* v. *Ross et al.* (*supra,* p. 465) a statute regulating dumping in the waters about the city of New York was held not to be local because the impairment of the New York harbor would affect the prosperity of the State and therefore the protection of the harbor was not local in the sense that the administration of justice in New York City, or street repairs, might be local.

So, in effect, the amendment of 1874 purporting to exclude the Legislature from acting by local or private laws in the thirteen fields stated by the Constitution, did not restrain the Legislature at all. If the act in terms was susceptible of applying to a class of things it was sustained, even though there were no such class and only one such thing. The decisions were so uniformly in one direction that the constitutional restriction was quite generally regarded as imposing no restraint on the Legislature.

But in 1897 an act was passed providing for the widening and improvement of highways in " any town " having a population of 8,000 or more, containing an incorporated village having a population of between 8,000 and 15,000, and not in Madison County. The court held the statute to be local and invalid. (*Matter of Henneberger,* 155 N. Y. 420, 428.) The court succeeded in finding and formulating a distinction between this statute and the one applying to counties having cities of 100,000 and territory beyond the city mapped out in streets.

The *Henneberger* case (*supra*) was against the current. Writing for the dissenters, Judge O'BRIEN said so plainly (p. 430 *et seq.*), and, indeed, this was quite frankly recognized by Judge GRAY writing for the majority (pp. 429, 430). The point had been reached beyond which the court would not sanction further legislative evasion of constitutional limitation. All that had been

done could not be undone in one case, but the breach was not to be widened and the trend of evasion was to be stopped.

The significance of this case is that it had a definite influence and it became a turning point. The future direction, delayed though it was, and the modern treatment of constitutional limitations upon legislative action were to be more in the spirit of the constitutional purpose and less credulous of a disingenuous but literal statutory conformity. The change did not occur suddenly or at once. Statutes general in terms for a while continued to be treated literally although of local application. *People* v. *Dunn* (157 N. Y. 528, 540), *Admiral Realty Co.* v. *City of New York* (206 N. Y. 110, 138) and *Matter of McAney* v. *Bd. of Estimate, etc.* (232 N. Y. 377, 392) are examples.

Twenty-nine years after the *Henneberger* case (*supra*) Chief Judge CARDOZO in *Matter of Mayor, etc., of New York* (*Elm St.*) (246 N. Y. 72, 76) was to regard that decision as an important and promising exception to a stultifying treatment of the constitutional distinction between general and special acts. The constitutional limitations, he felt, had undergone a similar fate to that of the Statute of Uses under the inventive skill of the chancellors in developing the mechanics of trusts. They had become little more than words. He noted, too, the modern public insistence manifested in the City Home Rule Amendment that constitutional limitations be obeyed by the Legislature not merely in terms, which was the cause for a great part of the failure of the Constitution to limit at all, but in effect as well.

And finally, he gave new definitions to an act "local in terms." If the class is so unnatural and wayward in formation that only by the rarest coincidence can it be viewed to include more than one locality, and at best but two or three, and these things are either apparent on the face of the act or judicial notice may be taken of them, the act is local in terms (pp. 78, 79). And this has become a modern standard. (See *Greene* v. *Dunscomb*, 281 N. Y. 261.)

The designation of Albany County by chapter 206 of the Laws of 1944 is as certain as the designation of the Town of New Rochelle by chapter 286 of the Laws of 1897. The "identifying tokens" are about as many and they are quite as unmistakable. They point to a unique locality. The statute does not limit itself to general classification. As Mr. Whalen argues from the language of Judge GRAY in *Matter of Henneberger* (*supra*, p. 430), "restriction is imposed upon restriction." The act is a local law; it provides for the selecting, drawing and summoning of grand and petit jurors and this is prohibited by the Constitution.

But, it is argued by the Attorney-General, conditions in respect of juries in Albany County are such that the general interests of the State are affected and hence a statute which would tend to correct such a situation is not local. It would thus be similar to acts operating in a limited geographical locality but protecting the general welfare or health of the State as in *Ferguson* v. *Ross et al.* (126 N. Y. 459, *supra*), *Robertson* v. *Zimmerman* (268 N. Y. 52) or *Adler* v. *Deegan et al.* (251 N. Y. 467). Whatever the intrinsic merits of this point may be, it is not open to debate because it urges the precise thing that the Constitution prohibits — local legislation affecting juries. The proper operation of the jury system is of State concern, but the people have exhibited that concern by a constitutional expression which treats the local jury bill as an evil. It cannot be argued seriously in the light of this language that the concern of the State is precisely opposite to constitutional denotation. A prohibition may not be misread as a sanction. Moreover, the only meaning that a " local " bill could have, applied to selecting, drawing or summoning jurors, would be as affecting counties locally, for, in the immemorial course of public administration in this State, counties were the units of government in which juries were selected, drawn and summoned, and the function was always performed by county officers chosen by the people or appointed by other county officers.

Besides this, the statute is not harmonious with subdivision (b) of section 1 of article IX of the Constitution. This is the County Home Rule Amendment of 1938. The Constitution of 1894 had imposed some restrictions upon the Legislature as to city laws and had set up zones of population in which the Legislature was required to act uniformly in respect of certain subjects, i. e., " the property, affairs or government " of cities. (N. Y. Const. [1894], art. XII, § 2.)

The Convention of 1915 adopted, and submitted to the people, an amendment to section 26 of article III of the Constitution of 1894, making the first provision for county home rule. This would have excluded the Legislature from the field of local or special laws relating to counties, except on request of the governing body of the county affected.

In 1921, section 27 of article III was amended in respects not material here, and in 1923 the first City Home Rule Amendment was adopted which excluded the Legislature from passing any law which shall be " special or local in its terms or in its effect " relating to " the property, affairs or government " of cities. In 1935 a County Government Amendment was added to section

26 of article III, for alternative forms of government for counties, after the adoption of which the Legislature would be excluded from enacting laws special or local in terms or effect relating to the " property, affairs or government " of any such county.

In part, the language excluding the Legislature from passing local laws and the mechanism of local consent, found in present subdivision (b) of section 1 of article IX find origin in the 1915 proposal. There are two notable differences between the 1915 proposal and the County Government Amendment adopted in 1938. The proposal of 1915 had excluded the Legislature from local or special laws relating to a county, which, under almost uniform judicial interpretation up to that time, meant local or special in terms. The 1938 amendment excluded the Legislature from enacting special or local laws in " terms " or " effect," and added a much broader specific exclusion of any law relating " specially to one county only."

In one respect, the 1938 proposal was not as broad as that of 1915. The 1915 amendment left no latitude for direct State legislative action in counties under any conditions without their consent. But the Convention of 1938, as its record abundantly demonstrates, was concerned with the " reserve power of the state " on the question of local home rule. By this the delegates understood the power of the State to intervene by local laws under unusual circumstances, even though generally the power to enact local legislation had been withheld or required local consent. Evidences of the reserve power appeared in section 2 of article XII of the Constitution of 1894, and in the City Home Rule Amendment of 1923, but not in the present City Home Rule provision (N. Y. Const., art. IX, § 11). The County Home Rule provision [N. Y. Const., art. IX, § 1, subd. (b)] retained the State's reserve power by providing that the Legislature could enact local laws affecting counties without local consent upon the governor's certificate of necessity showing the existence of facts within the county and concurrence of two thirds of each house of the Legislature.

But subject to the exercise of this reserve power of the State, the limitation here placed on the Legislature is the strongest constitutional interdiction on local legislation in the history of the State. It is not limited as were the provisions of 1894, 1923 and 1935 to laws relating to " property, affairs or government." Nor does it just prohibit " special " or " local " laws, but prohibits as well those special or local in effect as well as in terms. There was never heretofore a bar upon legislation, local in terms or in effect, unless it were limited in subject

matter to " property, affairs or government." This provision is quite unlimited in subject matter so long as it relates to a county.

Never before had the Constitution gone so far in delimiting the field of local action by the Legislature. While the City Home Rule provision of 1938 (N. Y. Const., art. IX, § 11) wiped out the reserve power of the State to act in relation to property, affairs or government, the direct limitation of legislative action is still confined to that enumeration. The limitation relating to counties, on the other hand, is plenary in its restriction.

The challenged statute is a local county law as well as a local jury law. The selection, drawing and summoning of jurors has, as I have pointed out, always been a function of county government and the duty of county officers, and it has been one of the functions of government in which counties, as such, were directly concerned. Highways, public relief, the drawing, summoning and payment of jurors, the collection of unpaid taxes, the recording of papers and the provision of a place for the court to sit, and of officers to enforce its judgments, are the traditional business of counties. These are not judicial functions; they are executive and administrative. The commissioner of jurors exercises a ministerial, not a judicial, power. (*People* v. *Dunn*, 157 N. Y. 528, 538, *supra*.)

This Act (L. 1944, ch. 206) provides for the continuance of the commissioner, a county officer; the length of his term of office; the amount of his bond; directs the county legislative body to provide for his salary; prohibits an alteration of salary during a term of office; directs the appropriate county officer to pay the salary; directs the county legislature to provide accommodations and buy supplies; directs the officer to appoint one assistant commissioner and directs him to appoint a detailed list of employees and allows him to appoint others at enumerated times and directs the county legislative body to fix their salary; provides for the removal of the commissioner and fixes his duties and the duties of certain other officers and provides penalties " for the benefit of the county." All of these matters, as well as the special arrangement for selecting the jurors, relate to a county and, indeed, to the government and administration of a county.

Finally, it is argued that section 13 of article IX nullifies subdivision (b) of section 1. The provisions, insofar as they matter here, are quite inconsistent. It is obvious no such inconsistency was or could have been intended. The provisions so stand because of an error in the mechanics of arrangement.

This appears by the processes in the Convention of 1938 leading to the composition of article IX.

But even without resort to such processes, the provisions of subdivision (b) of section 1 must be enforced upon a reading of article IX in its entirety. The context of section 13 clearly demonstrates that this portion of article IX (§§ 11–15) deals with cities as "local governments." Earlier the article deals with counties (§§ 1–7); with combined city and county and city and village questions (§§ 8, 9, 10) and finally with villages (§ 16). The divisions of local governments are segregated in logical sequence and the sources of the article are in the reports of three separate committees of the Convention.

There appears a negation of a negative. The Legislature may not act by special or local laws as to counties on one hand; on the other hand, nothing in the article so restrains the Legislature. Both mandates cannot be followed literally. They are equally authoritative and the court is required to construe the language in the light of what was intended to give life and vitality to the Constitution rather than to stifle it under interacting negatives. With deliberation and as a product of long constitutional development the Convention provided a limitation upon legislative action affecting counties and a provision as to when such action may be valid. To be read in the vital sense in which it was considered, offered to the people and accepted by them, indeed, to be read sensibly at all, the County Home Rule provision must be given effect.

Plaintiffs' motion for judgment on the pleadings is granted and the motions of defendants are denied, all without costs. Submit order, decision and judgment.