THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, v. DANIEL H. PRIOR, Defendant.

THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, v. MICHAEL T. SMITH, JOHN DOHERTY and ALBERT DINGLEY, Defendants.

THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, v. MICHAEL T. SMITH, Defendant.

THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, v. DANIEL WILLIGAN, DOUGLAS SLICK, ALBERT GROGAN, MERLE HENRY, JOHN WILLIGAN, CHARLES KOONZ and WILLIAM RUSSELL, Defendants.

THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, v. JAMES S. COLLINS, Defendant.

Supreme Court, Special Term, Albany County, December 19, 1944.

*Eugene G. Hess* for Daniel H. Prior, defendant.

*Daniel H. Prior* for Michael T. Smith, Daniel Willigan and John Willigan, defendants.

*Reuben H. Kohn* for James Collins, defendant.

*Nathaniel L. Goldstein, Attorney-General (George P. Monaghan* of counsel), for plaintiff.

MURRAY, J. On the 12th day of October, 1944, this court dismissed an indictment of conspiracy returned by the Grand Jury at an Extraordinary Term of the Supreme Court, Albany County, New York, against Frank S. Harris, Acting Mayor of the City of Albany, James J. McGuiness, Corporation Counsel, and Frank J. Cassidy. The opinion sets forth the reasons why such indictment was dismissed. (*People* v. *Harris,* 182 Misc. 787.) From the order of dismissal an appeal has been taken to the Appellate Division of the Supreme Court of the State of New York, Third Judicial Department. This appeal is pending and undetermined. It is a preferred case. The appeal should be argued and heard promptly.

The grounds, among others, deemed of sufficient weight for dismissal of the indictment in the *Harris* case (*supra*) were that it was not found by a legally formed grand jury; that in selecting such jury, a policy of exclusion was adopted contrary to law, particularly the provisions of section 223 of the Code of Criminal Procedure; that the Grand Jury, when finally chosen, was not one drawn by lot as required by statute, but a body of persons acceptable to the prosecution; and that the court summarily discharged grand jurors without challenge for any of the causes set forth in the Code of Criminal Procedure (§ 239) or without trial thereof.

Defendants moved for dismissal of the indictments against them on the ground that the Grand Jury at the Extraordinary Term was not a legally constituted body. They press the same objections against the manner and method by which the Grand Jury was formed, as did defendants Harris, McGuiness and Cassidy. They move for dismissal on the further ground that they have not been afforded a speedy trial.

The prosecution in opposition maintains that a rule of comity requires that defendants' motion be referred to the Trial Justice at the Extraordinary Term, Hon. PARTON SWIFT, for his decision thereon; that this court disqualify itself, because of certain intercepted telephone talks which occurred in the month of March, 1944, between a lawyer of the city of Albany, New York, and a person denominated by the prosecution as " political boss " of the Democratic organization of Albany County. The gist of such conversations was in relation to the commencement of a proposed action by a taxpayer to set aside a jury law. The lawyer desired to make an engagement in connection with the proposed litigation with " Bill Murray " or " our friend up in Troy " and tell him what " the program is ", and requested the so-called " boss " of the Albany County Democratic organization to make an appointment for him. No such appointment was ever made or had. Neither was the action to set aside the jury law nor any motion in connection therewith ever presented to or heard by this court. The jury law was declared void and unconstitutional by Justice FRANCIS BERGAN (*Stapleton* v. *Pinckney*, 182 Misc. 590). His decision and determination was thereafter upheld by the Court of Appeals of the State of New York (*Stapleton* v. *Pinckney*, 293 N. Y. 330).

When the *Harris* case (*supra*) was argued before me, no mention in the slightest was ever made by the prosecution of any of the alleged intercepted " talks " or " disclosures " now urged as ground of disqualification. Before discussing the merits of the prosecution's objections that this court refrain from hearing the motion of defendants, it must be remembered that defendants have legal rights which cannot be ignored, and that care be taken that no legal right of defendants be sacrificed by a too literal and slavish adherence to a rule or doctrine of judicial courtesy. " The effective enforcement of a well-designed penal code is of course indispensable for social security. But the Bill of Rights was added to the original Constitution in the conviction that too high a price may be paid even for the unhampered enforcement of the criminal law and that, in its attainment, other social objects of a free society should not be sacrificed." (*Feldman* v. *United States*, 322 U. S. 487, 489.)

An erroneous impression prevails, somewhat more or less, that an Extraordinary Term of the Supreme Court has all-inclusive jurisdiction. Such is not the fact. The following citations of decided cases in the Court of Appeals of the State of New York completely dispel such notion (*Matter of Reynolds* v. *Cropsey*, 241 N. Y. 389, 395, 396; *Saranac Land & Timber Co.* v. *Roberts*, 227 N. Y. 188, 191). Indictments found at an Extraordinary Term are pending in the Supreme Court and not in that particular term. (*Matter of Reynolds, supra.*) An Extraordinary Term is simply a term of the Supreme Court with the same jurisdiction as belongs to any term. There is no aura of omnipotence or finality surrounding an Extraordinary Term. "It does not mean that anything *must* be heard there. It merely creates a term at which there will be opportunity for a hearing. * * * It does not enlarge or diminish the rights of litigants. * * *. It is then a term of the Supreme Court with the same jurisdiction that belongs to any term (*People ex rel. Mayor, etc., of N. Y.* v. *Nichols*, 79 N. Y. 582; *State* v. *Register*, 133 N. C. 746, 749)." (*People ex rel. S. L. & T. Co.* v. *Supreme Court*, 220 N. Y. 487, 492.)

The jurisdiction of the Supreme Court is as wide as the boundaries of the State, and every person, natural or artificial, is subject to that jurisdiction. A suitor invoking the jurisdiction of the Supreme Court has legal rights under the Constitution which cannot be taken away from him. "He has a right to go into the Supreme Court anywhere for relief. To apply to the court, not to a particular member or territorial division of it. He cannot by legislative enactment be compelled to go before a particular member of it or to a specific county, although the court in the exercise of its power may, in furtherance of justice, subsequently send him there, but he has a right to apply to it for relief wherever within the limits of the State he finds it exercising its functions." (*Mussen* v. *Ausable Granite Works*, 63 Hun 367, 368, 369.) The administrative powers of courts must be exercised not alone in protecting the dignity and regularity of judicial proceedings, but more so in safeguarding the substantial legal rights of parties to litigation. It is in furtherance of justice that fundamental constitutional rights of defendants charged with crime be fairly and impartially preserved. It seldom happens that well-balanced administrative action by courts is obtained by blindly following precedent or any one rule or principle to the exclusion of common sense. More often it is reached by judicious compromise between conflicting decisions and also by analysis of existing facts and cir-

cumstances which are different in each case. Competent and conscientious judges may well differ as to what, in every case, should be done in furtherance of justice.

Only recently, the Third Judicial Department of the Appellate Division of the Supreme Court stated emphatically: "Appellant has come into the Supreme Court of the State of New York, a court to which it has a legal and a constitutional right to come, not as a matter of favor but as a matter of right, a court having general jurisdiction in both law and equity. The jurisdiction of that court is unlimited, unqualified, and coextensive with the boundaries of the State. The Legislature has no power to deprive it of jurisdiction or to limit or qualify the same although it may grant concurrent jurisdiction to other courts. The Supreme Court has jurisdiction to hear and determine any justiciable question of which the common law or chancery courts of England would have had cognizance, subject only to territorial limitations, such jurisdiction being broad enough to embrace all causes of action and all persons within the State's jurisdiction. *The door of that court should never be closed to any suitor who has a grievance which should be redressed on the spurious pretext that by going hat in hand to some administrative tribunal he may possibly be accorded a hearing.*" (Italics mine.) (*Niagara Falls Power Co.* v. *Halpin*, 267 App. Div. 236, 241.)

The practice of a defendant indicted at an Extraordinary Term in applying for an order to inspect the minutes of a grand jury at a Special Term rather than at the Extraordinary Term was directly challenged in the case of *People ex rel. Sherman* v. *Adjourned Special Term of Orange County* (206 App. Div. 799). The court approved the procedure of a defendant in so doing. It denied a motion by the prosecution for an order of prohibition to restrain the Special Term from passing on such motion in the following apt and pertinent language: "The Extraordinary Special and Trial Terms of the Supreme Court convened by the Governor of the State are merely additional to those terms of the court already designated to be held under the provisions of the Judiciary article of the Constitution. The Extraordinary Terms created under the Judiciary Law do not exclude the Special and Trial Terms created by the Constitution from exercising jurisdiction already delegated to such terms. (*People ex rel. Newton* v. *Special Term, Part 1,* 193 App. Div. 463). The court is of the unanimous opinion that the motion to inspect the minutes of the grand jury could be made at any Special Term in the Ninth Judicial District, or at the Extraordinary Term."

When the Grand Jury which indicted defendants was in process of formation at the Extraordinary Term, repeated protests and objections were made by counsel for defendant Shea, as to the method employed by the prosecution in impaneling the jury. The objections were overruled. Before the Grand Jury had been completed, Shea applied for a writ of prohibition to restrain the Trial Justice, Hon. PARTON SWIFT, from further proceeding on the ground that he had exceeded his jurisdiction — that he was without jurisdiction.

On this question whether Justice SWIFT did or did not exceed his jurisdiction or that he was without jurisdiction to proceed further, there was no unanimity of opinion either by the justices in the Appellate Division or the judges of the Court of Appeals (*Matter of Shea* v. *Swift,* 267 App. Div. 853, affd. 292 N. Y. 116, 120). There was diversity of opinion by them as to whether or not Justice SWIFT had jurisdiction. A majority held that Justice SWIFT had jurisdiction which was the sole and only question argued and determined. The Court of Appeals stated: '' In this proceeding for an order of prohibition, we may not pass upon the question whether in every instance the court correctly construed the procedural provisions of the statutes or ruled correctly upon objections or challenges. A majority of the court agree that the court did not act in excess of its jurisdiction.''

Comity, it must be understood, is not a rule of law but one of practice, convenience and expediency. It is something more than mere courtesy, but its obligation is not imperative. Comity persuades, but does not command. When there is doubt in the judge's mind as to the soundness of his views, then comity suggests a uniformity of ruling to avoid confusion until a higher court has settled the law, and comity demands only that deference be paid judgments of other co-ordinate tribunals. (*Mast, Foos & Co.* v. *Stover M'f'g Co.,* 177 U. S. 485; *Ward* v. *Bochino,* 181 Misc. 355.)

A reading of more than one thousand pages of the record of the examination of the persons called for Grand Jury service, and the many and repeated objections made as to the method employed in selecting and excusing grand jurors, and the rulings of the Trial Justice thereon, does not persuade me, in the actions before this court, that the rule of comity requires submission of defendants' motion to the Extraordinary Term. To so order seems quixotic and unjust, for in all human probability, the Trial Justice at the Extraordinary Term would adhere to his original rulings. To concede valid the contention of the prosecu-

tion that the motion to dismiss should be heard only by Justice SWIFT at the Extraordinary Term by reason of comity or judicial courtesy is a denial of a legal right of defendants to have their motion heard at a Special Term, and is also tacit admission of acceptance of the rule of the supremacy of man rather than law. To require defendants to return to the Extraordinary Term with their motion is not only at war with the traditional and fundamental principles of American freedom of thought, liberty and action, but an affront to the universal common-sense rule of equity and fair play that no judge should ever be forced to sit as an appellate court to pass judgment on his own rulings. Without impugning in the slightest the honor or judicial integrity of the Trial Justice, logic forbids, under the facts and circumstances, transfer of defendants' motion to the Extraordinary Term. To do so would be a futile, empty and formal act. To my mind, it would not be an act in furtherance of justice. Defendants have a lawful legal right to insist that their motion be determined by this court, and they object that this motion be transferred to Justice SWIFT for his action thereon.

An easy way to avoid rendering a decision on the merits would be to refer it to the Extraordinary Term, but such practice would not be just to either the prosecution or defendants. The words and language of Justice CARDOZO in *Loucks* v. *Standard Oil Co.* (224 N. Y. 99, 111) impress me profoundly, wherein, in speaking of comity, he states: '' The misleading word ' comity ' has been responsible for much of the trouble. It has been fertile in suggesting a discretion unregulated by general principles (Beale, Conflict of Laws, § 71). * * * The courts are not free to refuse to enforce a foreign right at the pleasure of the judges, to suit the individual notion of expediency or fairness. They do not close their doors unless help would violate some fundamental principle of justice, some prevalent conception of good morals, some deep-rooted tradition of the common weal.''

The legal right of defendants to apply to this Special Term for the order they seek is unquestioned. Nothing has been submitted which persuades me that public policy, good morals or any fundamental principle of justice has thereby been disregarded, violated or outraged. Defendants' motion is but natural procedure in view of the manner in which they assert the Grand Jury was selected. Essential fairness forbids that merely on the ground of comity defendants' motion should be referred to the Extraordinary Term.

With reference to prosecution's request that the court disqualify itself by reason of certain alleged intercepted tapped

telephone talks, it is difficult to understand why, for any such reason, it should do so. There is not a suggestion that either the lawyer or the "political boss" at any time talked with this court with reference to the jury law action or any other action. How this court is bound or should be bound by alleged conversations over telephone wires to which it was not a party and of which it had no knowledge is not possible for me to solve. A court could easily, if such is the law, be disqualified from hearing any action or motion if two persons or more hold a conversation, whether over the telephone or otherwise, wherein one is overheard to say that he has " fixed " the judge or that some " friend " of his has " seen " the judge or some other equally absurd cock-and-bull story that the judge will favor his side or the other side. Something more appealing and substantial must be presented than tapped excerpts of alleged telephone conversations to persuade this court on that account to refuse to hear defendants' motion.

It does not appear whether the Extraordinary Term did or did not grant the order to tap the telephone wires of the persons mentioned whose conversations were intercepted. It is very possible if my telephone line is tapped, I may be overheard referring to the Republican leader of Rensselaer County as my friend, or if in speaking of me, he likewise may be overheard referring to me as his friend. We are and have been friends for years, but that fact in itself is no legal reason why, if he is assailed by litigation and the issues are submitted to me for decision, I should be disqualified. To do so on the ground of friendship would be reprehensible and a plain shirking of duty. It has been well said that friendship is one of the few compensations of a complex life. No case nor any legal authority has been submitted to me which holds friendship a bar to judicial action.

Reference is made in the affidavit of the prosecution opposing the motion of defendants to the fact that this court granted a stay of proceedings on the part of the prosecution against defendants pending the hearing and determination of this motion without notice in violation of section 879 of the Civil Practice Act. The court freely admits inadvertent error in so doing, but fails to see the relevancy or materiality of such fact, inasmuch as the stay was vacated. This court was motivated in granting such stay for the reason that it had decided in the *Harris* case (182 Misc. 787, *supra*) that the Grand Jury had been improperly selected, and that until such ruling and issue was finally determined on appeal, a stay of proceedings against the prosecution of the indictments against defendants would harm no one.

So far as any inference or innuendo that this court might be swayed by politics, consciously or unconsciously, the record is that I was nominated and duly elected a Justice of the Supreme Court not only by the Democratic party, but by the Republican and American Labor parties as well. Persons of all political parties have been and, I hope, still are my friends. Likewise, persons without affiliation or loyalty to any political party are friendly towards me.

Careful consideration of all the facts and circumstances and the rights of the People and the rights of defendants to apply to a Special Term for relief as decided, impels me to deny the motion of the prosecution to refer this motion to the Extraordinary Term, and also to deny the motion of the prosecution that this court disqualify itself by reason of alleged intercepted telephone conversations. I am satisfied from the record that the Grand Jury which indicted defendants was not one drawn by lot as required by law; that the Grand Jury as impaneled at the Extraordinary Term was not one organized, selected and constituted pursuant to law, and that the objections of defendants in respect thereto are valid and hereby are sustained. Indictments dismissed.

Submit order in accordance herewith.